UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| TABITHA WHITE, | CIVIL ACTION |
| Plaintiff, | Case No. |
| v. | |
| UNITED STATES OF AMERICA and OFFICER JIMMY HIGHSMITH, | |
| Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff sues Defendants and alleges as follows:

**Jurisdiction**

1. This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and 28 U.S.C. §2671, et. seq., Federal Tort Claims Act.

2. Plaintiff filed a claim under the Federal Tort Claims Act March 7, 2014, (attached as Exhibit A), which claim was responded to without action September 28, 2016 (attached as Exhibit B).

3. Plaintiff has exhausted her administrative remedies and obtained the relief that the administrative remedies could afford.

4. Plaintiff has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

## Parties

5. At all times material hereto, Plaintiff TABITHA WHITE was a federal prisoner confined in FCI Tallahassee, in Tallahassee, Florida, which facility is within the Northern District of Florida.

6. At all times material hereto, Defendant JIMMY HIGHSMITH was a correctional officer at FCI Tallahassee, which facility is within the Northern District of Florida. Defendant Highsmith acted within the course and scope of his employment and under color of law.

7. At all times material hereto, Defendant UNITED STATES OF AMERICA owned and operated a corrections facility known as FCI Tallahassee and were the employers of Defendant J. HIGHSMITH.

## Common Allegations of Fact

8. During the year 2014, Plaintiff TABITHA WHITE was an inmate at FCI Tallahassee, a federal corrections facility, and was under the care and custody of that facility, and was a person to whom Defendants owed a duty of care.

9. During 2014, Defendant Jimmy Highsmith was a corrections officer at FCI Tallahassee with duties that involved the care and custody of Tabitha White.

10. Empowered by his position and abetted by other prison officials, Highsmith took the opportunity to have sexual intercourse with Ms. White on at least three occasions between March and May of 2014.

11. Highsmith had a practice of propositioning female inmates at FCI.

12. Highsmith used FCI resources to target women that he knew had a history of resignation due to long sexual abuse and exploitation.

13. Sometime in March, Highsmith saw White with contraband jewelry.

14. Highsmith then propositioned White, pointing out that he could write her up.

15. Inmates who are "written up" face discipline which could include being put in the Special Housing Unit (SHU) or increasing time to be served.

16. Prisoners at FCI Tallahassee uniformly fear the SHU because of the history of abusive treatment and deprivation in that housing unit.

17. In the course of his abuse of Tabitha White, Highsmith made clear to her that he had the power to make her life in prison more difficult if she failed to cooperate or if she reported the abuse.

18. White was led to believe she could get years added to her sentence if she reported Highsmith's misconduct to prison officials.

19. By reason of her status as a prisoner, Ms. White was unable to resist this predatory behavior and was initially afraid to report it for fear of retaliation.

20. At one point Highsmith sent a message to White that she had mail and when she came for it, he was waiting for her and sexually abused her.

21. On May 14, 2014, after lights out, Highsmith came to White's housing area.

22. Highsmith found White and instructed her to come to the housing office.

23. Other inmates in the unit noticed what they felt was strange behavior.

24. Several inmates went to the office door and some looked through a window.

25. Inmates saw Highsmith having sex with White.

26. Someone yelled, "she's fucking him."

27. About that time, a phone rang in the office.

28. On information and belief, officers in the control room who were monitoring the video cameras called to warn Highsmith.

29. On information and belief, prison officials at FCI Tallahassee were aware of Highsmith's sexual predations and enabled and covered for them.

30. Highsmith was able to escape from the housing unit without being caught.

31. As Highsmith was leaving, he told White, "don't worry about it."

32. On May 15, 2014, the morning after the incident, an inmate was instructed to scrub all the surfaces in the housing office with disinfectant cleaner.

33. Around the same time, Lt. Singletary interviewed White about the incident.

34. Since there had been witnesses, White felt there was no further need to remain silent and she came forward with the evidence of abuse.

35. White was taken to Tallahassee Memorial Hospital but Highsmith had worn a condom and there had been no DNA evidence to test except what had already been erased by the cleaning detail in the housing office.

36. Prison officials had video and still shots of the area where the sexual abuse took place and showed them to White during her interviews.

37. White testified to prison officials that Highsmith had sexually abused her, however at that time, she did not realize how she had been targeted by him.

38. Nevertheless, White fully expected Highsmith to suffer consequences.

39. White was informed that Highsmith would not be prosecuted.

40. White vigorously protested the failure to properly investigate, preserve available evidence, interview known witnesses and prosecute Highsmith.

41. The acts of the Defendant Highsmith violated Plaintiff's constitutional rights, were wrongful as a matter of both federal and Florida law and without justification under any applicable federal statute or rule.

42. Defendant Highsmith was acting within the course and scope of his employment and under color of law at the time of the wrongful acts.

43. FCI Tallahassee had an informal policy of turning a blind eye to abuse.

44. FCI officials enabled and abetted Highsmith in his sexual predation.

45. FCI officials failed to implement PREA regulations as of May 2014.

46. On March 7, 2014, Plaintiff served her claim in writing to the Federal Bureau of Prisons, U.S. Department of Justice, for administrative determination. (See Exhibit A, attached).

47. Plaintiff subsequently received notice in writing from Southeast Regional Counsel, dated September 28, 2016, stating that there had been no decision on the White claim and requesting more time. (See Exhibit B, attached) but stating that Ms. White was free to commence litigation.

**First Amendment Violation and Witness Intimidation**

48. Plaintiff's counsel have been doing sexual misconduct cases for over 15 years, well before the 2006 shoot-out between predatory FCI Tallahassee corrections officers and the FBI, which claimed two lives.

49. In the course of the preparation of this case, the Plaintiff's counsel have been routinely mistreated and discriminated against by FCI officials.

50. Plaintiff's counsel are not treated on the same basis as U.S. Attorneys.

51. Plaintiff's counsel have been turned away from scheduled interviews with clients and witnesses, physically searched, and had their official mail opened by prison staff outside the presence of their addressee clients.

52. Plaintiff has been forced to meet with her counsel in a public place without any provisions for privacy while, on information and belief, counsel for the United States are given convenient private facilities for interviews.

53. The warden of Tallahassee FCI has refused to respond to written grievances from Plaintiff's counsel about harassment and discrimination against Plaintiff's attorneys.

54. The harassment and discrimination against Plaintiff's attorneys punishes her exercise of her First Amendment rights and impairs her constitutional right to counsel.

55. It has been the custom of United States officials, perhaps unofficial, to place victims and witnesses to facts relating to sexual abuse in confinement, to make threats against them, and often summarily transfer them.

56. It has also been the custom of the United States to force Plaintiffs to endlessly and painfully describe their victimization and, in this case, to describe her masturbation practices, though inadmissible in court.

57. These dislocations have a very powerful impact on the willingness of prisoner witnesses to come forward and expose misconduct since they threaten the stability of a prisoner's living situation in a material way.

58. For instance, when the inmate who was ordered to clean all the surfaces in the office where Officer Highsmith sexually abused Plaintiff spoke out, she was threatened and transferred against her will after years at FCI Tallahassee.

59. In a prior case in 2014, Plaintiff's counsel deposed a Southeastern Region BOP official who said new policies had been implemented to protect sexual misconduct victims from retaliation.

60. More recent conduct gives lie to that representation.

61. Although FCI Tallahassee passed a Prison Rape Elimination Act (PREA) audit in 2015, most of the posters giving inmates phone numbers to report sexual abuse had only been put up days before the auditors arrived.

62. The ongoing intimidation tactics have a powerful impact on witnesses and send the message that they should forget what they saw and heard when litigation is initiated and they are called for deposition and trial.

63. These tactics have been used in the instant case and have had the foreseeable effect of intimidating and silencing witnesses and chilling the Plaintiff's First Amendment right to redress grievances through counsel.

64. The transfers do not moot the harmful effect of the intimidation tactics and interference in First Amendment expression since they are an integral part of the intimidation tactics brought to bear on victims and witnesses.

## Causes of Action

### I. Cruel and Unusual Punishment (Eighth Amendment) -- Highsmith

65. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

66. Plaintiff White is entitled to relief against Defendant Highsmith because on at least three occasions he violated her Eighth Amendment rights by performing coercive sexual acts involving sexual penetration.

67. Defendant Highsmith intended to cause this harmful and offensive contact with White in that the sexual acts were deliberate and in that Highsmith made clear that he had the power to make her prison life harder.

68. The rape of Plaintiff by Defendant Highsmith was accomplished under color of law and caused Plaintiff to be deprived of rights, privileges or immunities secured by the Eighth Amendment to the U.S. Constitution.

69. Severe and repeated sexual abuse is not part of the penalty criminal offenders pay for their offenses against society and constitutes a cognizable claim of cruel and unusual punishment under the Eighth Amendment.

70. As a result of the rape of Plaintiff by Defendant Highsmith, Plaintiff suffered physical pain and trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory and punitive damages and costs against Defendant HIGHSMITH, and such other relief as justice may require.

## II.  Federal Tort Claims Act Claim (Negligence) as to the United States

71. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

72. Plaintiff is entitled to relief against Defendant, United States of America because it breached its duty of care to Plaintiff, an inmate in its care and custody, in that it negligently operated and managed FCI Tallahassee by:

    a. Hiring, retaining and entrusting Defendant Highsmith who is, and was known or should have been known to Defendant to be of such poor moral character, temperament, and disposition as to be unfit to be hired and retained as a corrections officer and placed in charge of the Plaintiff.

    b. Failing to implement such policies and procedures for the operation and management of FCI Tallahassee as would reasonably protect Plaintiff and others detained or incarcerated in the corrections facility from Defendant Highsmith or other predatory corrections facility employees.

    c. Failing to properly supervise, investigate, and review the operation and management of the corrections facility and the activities and performance of Defendant Highsmith as an employee.

    d. Failing in the course of its investigation of the sexual abuse of other inmates to protect subsequent victims like White.

    e. Failing in the course of its investigation of Highsmith's sexual abuse of White to protect other inmates pursued by Highsmith.

73. The negligence of Defendant United States of America was wrongful as a tort under the law of Florida and of the United States and without excuse or justification under any applicable state or federal statute or rule.

74. As a result of the wrongful acts of Defendant United States of America, Plaintiff suffered physical trauma and invasion of her person, suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

### III.   Federal Tort Claims Act (Battery) as to Defendant United States

75. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

76. Plaintiff is entitled to relief against the United States of America because Defendant Highsmith sexually battered her under the color of law as a law enforcement officer of the United States.

77. Defendant Highsmith performed sexual acts on Plaintiff against her will and without her freely-given consent and such acts were wrongful as a tort under the law of Florida and of the United States and without justification or excuse under any applicable state or federal statute or rule.

78. In committing the abuse, Defendant Highsmith was acting within the course and scope of his employment with Defendant United States of America, using the badges of coercive authority given him by his employers.

79. As a result of the abuse by Defendant Highsmith, Plaintiff suffered physical trauma and invasion of her person, suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

### IV.   Federal Tort Claims Act (First Amendment) as to the United States

80. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

81. Plaintiff is entitled to relief against the United States of America because the United States has interfered with her First Amendment right to consult legal counsel and redress grievances through counsel.

82. Defendant United States has sought to intimidate, interfere with, and impede Plaintiff's access to her attorneys and compromised the confidentiality of her meetings and communications with her attorneys.

83. As a result of these wrongful acts by the United States, Plaintiff has suffered a violation of her constitutional rights to free speech and redress of grievances through counsel.

WHEREFORE, Plaintiff seeks compensatory damages and costs against Defendant UNITED STATES OF AMERICA.

### V. Federal Tort Claims Act (Injunctive Relief) as to the United States

84. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

85. Plaintiff is entitled to injunctive relief against the United States of America because the United States has interfered with her First Amendment right to consult legal counsel and redress grievances through counsel.

86. Defendant United States has sought to intimidate, interfere with, and impede Plaintiff's access to her attorneys and compromised the confidentiality of her meetings and communications with her attorneys.

87. Defendant United States has used threats, confinement, and transfers to intimidate the Plaintiff and her witnesses and to discourage truthful testimony by witnesses to the abuses suffered by Plaintiff.

88. As a result of these wrongful acts by the United States, Plaintiff has suffered and will suffer violations of her constitutional rights now and in the future, which violations are likely to cause irreparable injury.

89. Plaintiff therefore seeks the following injunctive relief:

    a. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs by threats, confinement, and transfers.

b. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs' witnesses by threats, confinement, and transfers.

c. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of delaying and otherwise impeding Plaintiff's private communication with counsel.

d. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of retaliating against Plaintiffs by threats, confinement, and transfers.

e. A plan of training and supervision of prison staff to prevent the U.S. Bureau of Prisons policies, official or unofficial, of enabling, warning, and covering up for sexual predators in uniform.

f. A plan of training and supervision of prison staff to require the U.S. Bureau of Prisons to treat counsel for Plaintiffs on the same basis, affording them the same courtesies and facilities as counsel for the United States of America.

WHEREFORE, Plaintiff seeks injunctive relief and costs against Defendant UNITED STATES OF AMERICA.

## **Prayer for Relief**

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A. That the Court assume jurisdiction over this action;

B. Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and Laws of the United States and Florida and provide appropriate injunctive relief;

C. Award compensatory damages against each of the defendants herein;

D. Award punitive damages against Individual Defendant under federal law;

E. Provide a trial by jury on all issues so triable;

F. Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Fax: 850 561-0836

RICHARD E. JOHNSON, ESQ.
Florida Bar Number 858323
MELISSA A. HORWITZ
Florida Bar Number 017333
Law Office of Richard E. Johnson
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 425-1997; 561-0836 fax

Attorneys for Plaintiff