IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TABITHA WHITE,                              Case no. 4:17cv59-MW-CAS

     Plaintiff,

v.

UNITED STATES OF AMERICA and
OFFICER JIMMY HIGHSMITH,

     Defendants.

_____/

**UNITED STATES OF AMERICA'S MOTION TO DISMISS**

Defendant, the UNITED STATES OF AMERICA[1], through its counsel, the

United States Attorney, Northern District of Florida, moves to dismiss this action,

pursuant to *Fed. R. Civ. P.* 12(b)(1), and in the alternative, *Fed. R. Civ. P.* 12(b)(6)

for the reasons set forth in this Motion and Memorandum of Law.

**INTRODUCTION**

Plaintiff has brought a claim under the Federal Torts Claim Act, (hereinafter,

"FTCA") against the United States of America and a *Bivens* action against Officer

James Highsmith in his individual capacity.   (ECF 1)  Plaintiff alleges that the

United States negligently operated and managed FCI Tallahassee, where Plaintiff

---

[1] The United States Attorney only represents the Defendant, United States of America.

was housed; that the United States is liable for Officer Highsmith sexually battering Plaintiff; that it violated Plaintiff's First Amendment Rights; and lastly, that because it interfered with Plaintiff's First Amendment Rights, Plaintiff is entitled to injunctive relief.   (Id.)

The Discretionary Function Exception to the FTCA shields the United States from liability on Plaintiff's Negligence claims.  Secondly, neither Plaintiff's Battery, First Amendment, or Injunctive Relief claims are cognizable under the FTCA. Finally, Plaintiff has failed to exhaust her administrative remedies with respect to her First Amendment claim.   Thus, Plaintiff's claims against the United States should be dismissed in their entirety.

## STANDARDS OF REVIEW

### A.  Rule 12(b)(1) Motion to Dismiss Standard

Plaintiff's claims are subject to dismissal pursuant to *Fed. R. Civ. P.* 12(b)(1), which provides that a defendant may move to dismiss a complaint for lack of subject matter jurisdiction on facial or factual grounds.  *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F. 3d 1271, 1279 (11th Cir. 2009). A facial challenge is reviewed, "based solely on the allegations in the complaint." *Id*. A factual challenge occurs, however, when a defendant alleges a lack of subject matter jurisdiction based on facts presented outside the face of the complaint itself.  *Id*.  In considering a facial challenge, "the court must, as with a Rule 12(b)(6) motion, take the complaint's

allegations as true." *Id*. However, in a factual challenge, "the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Id*. When jurisdictional evidence is presented, the Court is free to weigh the evidence to satisfy itself, as to whether or not it has jurisdiction. *Id*.

### B.  Rule 12(b)(6) Motion to Dismiss Standard

In order to overcome a *Fed. R. Civ. P.*12(b)(6) motion, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations are not entitled to a presumption of truth. See *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Under *Fed. R. Civ. P.* 12(b)(6), "[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."  A*ustin v. Modern Woodman of Am.*, 275 Fed. Appx. 925, 926 (11ᵗʰ Cir. 2008) (quoting *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1329 (11ᵗʰ Cir. 2006).  However, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Page v. Postmaster Gen. & Chief Exec. Officer of the United States Postal Serv.*, 493 Fed. Appx. 994, 995 (11ᵗʰ Cir. 2012).  In considering a motion to dismiss for failure to exhaust, the court may properly consider facts outside of the pleadings and resolve factual disputes so long

as these disputes do not decide the merits, and the parties have sufficient opportunity to develop the record.  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

## SUMMARY OF MATERIAL FACTS

During the year 2014, Plaintiff was a Bureau of Prisons (hereinafter, "BOP") inmate, housed at FCI Tallahassee in Tallahassee, Florida.  (ECF 1, p. 2, para. 8)  At that time, Officer Highsmith was employed by the BOP as a correctional officer at FCI Tallahassee.  (Id., p. 2, paras. 6, 9)   Plaintiff alleges that she and Officer Highsmith engaged in sexual intercourse on at least three occasions between March and May 2014.  (Id., p. 3, para. 10)   When interviewed by BOP officials, Plaintiff presented evidence of abuse and later testified that Officer Highsmith had sexually abused her.  (Id., p. 4, paras. 33-34; p. 5, para. 37)  After being interviewed, Plaintiff was taken to Tallahassee Memorial Hospital.  (Id., p. 5, para. 35)  However, Plaintiff advised that Officer Highsmith wore a condom, and there was no finding of evidence for a DNA analysis.  (Id.)

Plaintiff filed an administrative claim alleging sexual abuse on March 10, 2016, which was later denied.  (ECF 8-1: Declaration of Lynneth Leslie, pp. 1-2, para. 4)  Plaintiff has not filed any other administrative tort claims.  (Id.)

## MEMORANDUM OF LAW AND ARGUMENTS

**I.    PLAINTIFF'S NEGLIGENCE CLAIMS (CAUSE OF ACTION II) ARE BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION TO THE FTCA.**

The FTCA provides a limited waiver of sovereign immunity for the United States for claims in tort, but exempts from that waiver of immunity "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency" or a government employee.  28 U.S.C. § 2680(a).   Thus, the United States and its agencies are immune from suit absent a waiver of sovereign immunity.   *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.CT 996, 1000 (1994).   Where the discretionary function exception applies, the FTCA claim must be dismissed for a lack of subject matter jurisdiction.  *Powers v. United States*, 996 F.2d 1121, 1126 (11th Cir. 1993).  Courts have recognized that scenarios "upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."  *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999).  Under § 2628(a), the FTCA's general waiver of sovereign immunity does not apply where the challenged act involves 1) "an element of judgment or choice" and 2) is "susceptible to policy analysis."  *United States v. Gaubert*, 499 U.S. 315, 322-25 (1991).

While it does not create a substantive right or a separate cause of action, the Attorney General's delegation of authority to the BOP sets forth in law and policy the BOP's duty to provide for inmate safety.   Specifically, the law states the following:

The Bureau of Prisons, under the direction of the Attorney General, shall:

    (1) have charge of the management and regulation of all Federal penal and correctional institutions;

    (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

    (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a).

"[T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by [§] 4042, independent of an inconsistent state rule." *United States v. Muniz*, 374 U.S. 150, 164-65 (1963).  Although the statute clearly sets forth a "mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty."   *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir.1997).   Thus, BOP officials have discretion in deciding how to accomplish these objectives.  See *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998).

With respect to the first element set forth in *Gaubert*, the 11th Circuit has held that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." *Id*.   To remove discretion, a policy or provision must include a "fixed or readily ascertainable standard." *Cranford v. United States*, 455 F.3d 955, 958 (11th Cir. 2006); *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997).

With respect to the second element, the policies pertaining to hiring, training, supervision, and retention provide discretion to the BOP and are susceptible to an analysis involving social, economic, or political policy considerations.   See *Gaubert,* 499 U.S. at 322-23, 325.   There are a number of considerations for the proper balancing of economic resources and staffing needs to maintain the internal security of the institution.   "The focus of this inquiry "is not the agent's subjective intent.., but on the nature of the actions taken and on whether they are susceptible to policy analysis."   *Id.* at 325.   This prong does not require a "weighing of policy considerations."   *OSI, Inc., v. United States*, 285 F.3d 947, 950-51 (11th Cir. 2001). The Eleventh Circuit "presume[s] that actions or decisions are grounded in public policy in cases where the statute allows government officials to exercise discretion." *Cohen*, 151 F.3d at 1344, quoting *Gaubert,* 499 U.S. at 324.   Plaintiff should not be able to rebut this presumption given the Supreme Court's history of

according a wide range of deference to prison administrators.  *Id.*, 151 F.3d at 1344, quoting *Gaubert*, 499 U.S. at 323, ("Such second guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to 'prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy though the medium of an action in tort.' ")

Essentially, Plaintiff relies in her Complaint upon the BOP's decisions involving the hiring, training, retention, and supervision of Officer Highsmith to argue that the BOP negligently operated and managed the prison.   (ECF 1, p. 10, para. 72)  Although the Eleventh Circuit has never specifically addressed this issue, it logically follows from the Eleventh Circuit's precedent and the Supreme Court's two-pronged test that decisions regarding hiring, training, retention, and supervision are subject to the discretionary function exception.  Other circuits directly addressing the issue have concluded that hiring, supervision, training, and retention of employees are discretionary functions under the FTCA. See, e.g.,  *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006) ("Courts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions*."); Crete v. City of Lowell*, 418 F.3d 54, 64 (1st Cir. 2005) ("[U]niformly the federal circuit courts under the FTCA have found that employer decisions such as hiring, discipline, and termination of employees are within the discretionary

function exception."); *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) (holding that allegedly negligent employment, supervision, and training of federal customs agents fell within discretionary function exception of FTCA); *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995) (Post Office's hiring decisions involved weighing of options and thus, fell under discretionary function exception to FTCA); *Richman v. Straley*, 48 F.3d 1139, 1146-47 (10th Cir. 1995) (stating that decisions regarding employment are inherently discretionary and that "such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing.").

The manner in which employees are trained and what should be included in that  training program have been  specifically determined to be  discretionary functions by the Eleventh Circuit.   See *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001) (applying state law discretionary function exception); See also *Steele v. United States*, 09-cv-01577-CMA-CBS, 2010 WL 2501200, at *3-6 (D. Co. June 15, 2010) (holding that claims alleging negligent failure to train and supervise Bureau of Prisons correctional officers in responding to confrontations among inmates were barred by the discretionary function exception); *LeRose v. United States*, 285 F. Appx 93 (4th Cir. 2008) (discretionary function exception to government's waiver of sovereign immunity under the FTCA applied to prevent plaintiffs from recovering on claim that government negligently hired, retained, and

supervised correctional officer); *Doc Tomkiel v. United States*, No. 8:14-CV-2758-T-27TBM, 2016 WL 3212088, at *3 (M.D. Fla. June 7, 2016) ("Courts have recognized 'it is settled law that the federal government has the unquestioned right to choose its own employees and is therefore not liable for acts done by it in the exercise of this right.'") (quoting *Radford v. United States*, 264 F.2d 709, 710 (5th Cir. 1959)); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.").

Permitting negligent hiring, supervision, and retention claims "would require ... the type of judicial second-guessing that Congress intended to avoid." *Tonelli*, 60 F.3d at 496; *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[T]he hiring, training, and supervision of [... employees] are surely among those involving the exercise of political, social, or economic judgment."); *Muick v. Reno*, 83 F. Appx 851, 853 (8th Cir. 2003) (FTCA claim arising from an attack by one prisoner against another barred by FTCA's discretionary-function exception, because claim was based on allegation of negligent or improper staffing of prison); *Cohen*, 151 F.3d at 1344 (negligent staffing claim barred under discretionary function exception).

Plaintiff also attacks the manner in which sexual abuse investigations were conducted by the BOP[2]. (ECF 1, p. 10, para. 72)  Although the BOP has a Program Statement, "Sexually Abusive Behavior Prevention and Intervention Program, which addresses sexual abuse investigations[3], the discretionary function exception is still applicable to Plaintiff's negligence claims involving the investigations conducted by the BOP.  (See Exhibits 8-2: PS 5324.09 (August 20, 2012-January 5, 2014); Exhibit 8-3: PS 5324.11 (January 6, 2014-June 3, 2015); and Exhibit 8-4: PS 5324.12 (June 4, 2015 – present)).   Maintaining the apparent discretion in conducting its sex abuse investigations, the BOP incorporates 28 C.F.R. §115.71 into its policies.   The BOP includes the following requirements in its policy: a prompt and thorough investigation; the investigator to have special training in sexual abuse investigation; to gather evidence and interview witnesses and review prior complaints against the alleged perpetrator; to consult with law enforcement/prosecutors as necessary before conducting compelled interviews; to document the findings in a written report; and to refer the matter for prosecution if

---

[2] To the extent that Plaintiff's claims attacking the BOP's investigations of sexual abuse allegations are raised on behalf of other inmates, Plaintiff fails to assert legal standing.  Under Florida law, "a litigant must assert his or her own legal rights and interests, and cannot rest on a claim for relief on the legal rights and interests of third parties."  *Alterra Healthcare Corp. v. Estate of Shelly*, 827 So. 2d 936, 941 (Fla. 2001)(quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

[3] Program Statement (hereinafter, "PS") 5324.09 has been minimally revised over the years.

substantiated allegations of criminal conduct are found.   (See Exhibit 8-2, pp. 30-31; Exhibit 8-3, pp. 44-46; Exhibit 8-4, pp. 43-45).

While the Code of Federal Regulations and the BOP's Program Statement have requirements regarding the investigator and the investigation itself, BOP maintains significant discretion in its sex abuse investigations.   See 28 C.F.R. §115.71(c) ((discusses the "nuts and bolts" for what to include in the investigation) in both investigating and reaching the ultimate conclusion as to whether the sexual abuse allegations are substantiated or unfounded.)   The policy sets forth the need to "preserve maximum flexibility to investigate the [sex abuse] allegations."   (See Exhibit 8-2, §115.72, p. 31)    It is further apparent that the BOP has discretion in implementing the evidentiary standard for administrative investigations into sex abuse allegations "in accordance with its disciplinary/adverse action process and collective bargaining agreement, and applicable laws, rules, and regulations." (Exhibit 8-3, §115.72, p. 46; Exhibit 8-4, §115.72, p. 45)

These policies addressing sex abuse investigations are susceptible to an analysis involving social, economic, or political policy considerations.   See *Gaubert,* 499 U.S. at 322-23, 325.   Here, the policy considerations include economic resources, the investigator's choice of investigative techniques, and BOP staffing needs to maintain the security of the institution.   As such, the discretionary function exception to the FTCA is applicable.

Courts have similarly recognized that "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions – investigative and prosecutorial alike – are discretionary in nature, and therefore, by Congressional mandate, immune from judicial review." *Littell v. United States*, 191 F.Supp. 2d 1338, 1345 (M.D. Fla. 2002), quoting *Mesa v. United States,* 837 F.Supp. 1210, 1213 (S.D. Fla. 1993) (internal citations omitted). Such decisions implicate policy judgment regarding choices on balancing the agency's goals and resources. See *Reeves v. United States of America*, et. al., 809 F.Supp.92, 94-96 (N.D. Ga. 1992)(internal citations omitted).

Traditionally, courts are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See *Procunier v. Martinez*, 416 U.S. 396, 404-05, 94 S. Ct. 1800 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874 (1989); See also *Alfrey v. United States*, 276 F.3d 557, 564-65 (9th Cir. 2002)(discretionary function exception protected prison's decision not to respond to or report inmate threats); *Dykstra v. United States*, 140 F.3d 791, 796 (8th Cir. 1998)(discretionary function exception applicable where inmate alleged prison's failure to protect inmate from sexual assault by another inmate);

*Calderon*, 123 F.3d at 949 (discretionary function exception protected manner in which prison responded to threats by inmate toward fellow inmate); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[D]ecisions with regard to … allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have the flexibility to operate."); *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.") (emphasis added).

The Discretionary Function Exception to the FTCA bars liability against the United States.  Hence, Plaintiff's negligence claims should be dismissed due to lack of subject matter jurisdiction.

## II.   THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY    WITH REGARDS TO PLAINTIFF'S BATTERY CLAIM (CAUSE OF ACTION III).

The Supreme Court has held that the waiver of sovereign immunity created in the FTCA extends to acts or omissions of law enforcement officers, i.e., BOP officers, that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest.  *Millbrook v. United States*, 133 S. Ct. 1441 (2013).   However, it is explicit in the FTCA that, for the waiver of sovereign

immunity to take effect, the allegedly negligent employee must have been acting within the "scope of his office or employment," and under circumstances in which the United States, if a private person, would be liable to the claimant under the law of the state where the act or omission occurred. *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).

For FTCA claims, the determination as to whether an employee was acting within the scope of his employment at the time of the act or omission is a question of the law of the state where the act or omission occurred.  *See Bennett v. United States*, 102 F.3d 486, 489 (11th Cir. 1996) (applying Georgia law to determine scope of employment question); *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (applying Florida law). Additionally, "FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of *respondeat superior* and apparent authority." *Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008) (citing *St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001), and *Primeaux v. United States,* 181 F.3d 876, 878 (8th Cir.1999) (en banc)).

Under Florida law, the "course and scope of employment" test for liability of the private and the public employer are essentially the same.  *Hennagan v. Dep't of Highway Safety and Motor Vehicles*, 467 So.2d 748, 750 (Fla 1st DCA 1985). Generally, an employer is vicariously liable for the wrongful act of his employee

that causes injury to another if the wrongful act is done while the employee is acting within the scope or apparent scope of his employment, even if the wrongful act constitutes a crime or was otherwise not authorized (or was forbidden) by the employer. *Id.*   An employee's conduct is within the scope where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master. *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) (AUSA not in scope if leaked information about on-going criminal investigation to the news media); *Iglesia Christiania La Casa del Senor v. L.M.*, 783 So. 2d 353, 357 (Fla. 3rd DCA 2001)(pastor, who sexually abused minor, engaged in criminal conduct which was independent, self-serving act not within course and scope of employment).

"[A]n employee is not acting in the scope of employment if it can be found that the employee has 'stepped away' from the employer's business at the time of the infliction of the tort and that the motive was unrelated to the employee's duties, but rather was in furtherance of the employee's interests; then, the master cannot be held liable for the servant's act." *Hennagan*, 467 So. 2d at 750 *(quoting Martin v. United Securities Service, Inc.*, 373 So.2d 720 (Fla. 1st DCA 1979)).  Thus, the issue is "whether the employee was doing what his employment contemplated" at the time of the act in question. *Nadler*, 951 F.2d at 305 (internal quotations omitted).

"Sexual assaults and batteries committed by employees are generally held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Goss v. Human Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (citing *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th DCA 1985)); *Special Olympics Fla., Inc. v. Showalter*, 6 So. 3d 662, 665-66 (Fla. 5th DCA 2009) (Special Olympics employee not in scope of employment when he molested two developmentally disabled adults in parking lot during athletic competition put on by Special Olympics); *Agriturf Mgmt., Inc. v. Roe,* 656 So. 2d 954 (Fla. 2d DCA 1995) (finding abuse occurring on Agriturf's property during time perpetrator closing business not within scope of employment because sexual abuse not in furtherance of employer's business objectives); *Mason v. Fla. Sheriffs' Self–Ins. Fund,* 699 So .2d 268 (Fla. 5th DCA 1997) (holding sexual assault by officer not within scope of employment, even though officer on duty, in uniform and serving warrant on woman he raped: "Because there was not even the pretense of lawful right in McNally's performance of this act, it was not with[]in the scope of his employment."); *see also Andersen v. United States*, No. 09-60364-CIV-GOLD, 2009 WL 6633307 (S.D. Fla. Oct. 21, 2009) (assistant special agent of the United States Postal Service (USPS) was not acting within the scope of his employment under Florida law when he allegedly falsely imprisoned and battered a security guard; no purpose of the USPS was being

served or could have been intended by the agent to have been served by the battery and false imprisonment of the security guard); *Doe v. Norwich Roman Catholic Diocesan Corp.*, 268 F. Supp. 2d 139, 142 (D. Conn. 2003) ("Usually, it is a question of fact as to whether a willful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business ... But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law ... Cases of sexual abuse often represent such a strong deviation from furthering an employer's business.").

There is absolutely no connection between Officer Highsmith's duties as a Correctional Officer and his alleged actions in engaging in sexual activity with Plaintiff.  *See Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1993)(when correctional officer engages in sexual activity with inmate "it would be impossible to assert that he was actuated in any way by the purpose of serving the Bureau of Prisons").  Here, sexual conduct with inmates is not the kind of conduct Officer Highsmith was employed to perform.  It is difficult to imagine any action that can be more personally motivated in nature (and more contradictory to the employer's purpose) than a correctional officer engaging in sexual activity with an inmate under his care.  Therefore, Officer Highsmith was in no way within the scope of his employment, if as alleged, he engaged in sexual activities with Plaintiff because his motives were in furtherance of his own interests and in direct violation of BOP

policy.

Although Plaintiff alleges that Officer Highsmith was acting under color of law at the time of the alleged sexual abuse in light of the decision in *Bobbie Bolton v. USA and Officer Linton*, Order on Motion for Summary Judgment, No. 4:03-cv-00307 (N.D. Fla. Nov. 22, 2004), there is nothing in the <u>text</u> of the FTCA that expands the United States' liability to torts committed outside the scope of employment.   Since the statute is a waiver of sovereign immunity, its text should be construed in accordance with the plain language of the waiver.   *See Smith v. United States*, 507 U.S. 197, 203 (1993) ("We should also have in mind that the [FTCA] waives the immunity of the United States and that ... we should not take it upon ourselves to extend the waiver beyond that which Congress intended.") (omission in original).   See also *Daniels v. United States*, 470 F. Supp. 64, 68 (E.D.N.C. 1979) (holding that in order for the United States to be liable for intentional torts of federal law enforcement officer under the FTCA, officer must be acting within the scope of his employment, and it is not sufficient that he is acting under color of law).   Further, if Congress wanted to expand the scope of the United States' liability to include torts committed "under color of law," it could have so stated in the statutory amendment that resulted in § 2680(h).   *See Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) (referencing "*expressio unius est exclusio alterius*" maxim of statutory construction).

The United States has not waived its sovereign immunity for Plaintiff to proceed with her Battery claim.   Thus, Plaintiff's Battery Claim is not cognizable under the FTCA, and should be dismissed due to lack of subject matter jurisdiction.

## III.   PLAINTIFF'S FIRST AMENDMENT CLAIMS (CAUSE OF ACTION IV) SHOULD BE DISMISSED.

### A.  Plaintiff's Constitutional Claims are not cognizable under the FTCA.

Plaintiff alleges a claim against the United States under the FTCA for alleged interference with her First Amendment right to consult legal counsel and right to redress grievances through counsel.  (ECF 1, pp. 12-13, paras. 80-83)  However, the FTCA does not apply to claims of constitutional violations, as the basis for such claims is federal, rather than state law, and the United States has not waived its sovereign immunity with respect to such claims.  *See Meyer*, 510 U.S. at 477-78 ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Hope v. Bureau of Prisons*, 476 F. Appx 702, 705 (11th Cir. 2012) ("[C]onstitutional tort claims may not be brought under the FTCA.").  As Plaintiff has identified no other statutory provision that waives the United States' sovereign immunity for constitutional tort claims (and none exists), this claim should be dismissed for a lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475 (recognizing that "sovereign immunity is jurisdictional in nature").

Accordingly, the United States has not waived its sovereign immunity for Plaintiff to bring her First Amendment claim under the FTCA.  Thus, this claim is not cognizable under the FTCA, and should be dismissed for lack of subject matter jurisdiction.

B. *Plaintiff has failed to exhaust her administrative remedies for her First Amendment claims.*

Plaintiff has also failed to exhaust her administrative remedies regarding her First Amendment claim pertaining to contact with her attorneys and witness intimidation as alleged in Paragraphs 48-64 and 80-83 of her Complaint.  (ECF 1, pp. 6-8, 12-13; ECF 8-1)  "[T]o properly exhaust administrative remedies prisoners **must complete the administrative review process** in accordance with the applicable procedural rules, rules that are defined not by the PLRA [*Prisoner Litigation Reform Act*], but by the prison grievance process itself."  *West v. Peoples*, 589 Fed. Appx. 923, 925 (11th Cir. 2014) (internal quotations omitted) (emphasis added).   *§ 1997e(a)* of the PLRA requires that inmates exhaust all available administrative remedies before bringing an action under any federal law. *42 U.S.C. § 1997e(a)* (as amended 1996); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The *PLRA* specifically provides:

> No action shall be brought with respect to prison conditions under section 1983 or this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*See 42 U.S.C. § 1997e(a)*.  "Exhaustion of all available administrative remedies is a mandatory precondition to suit."  *Sexton v. Futch*, 2016 U.S. Dist. LEXIS 116689 (N.D. Fla. Aug. 2, 2016).  "This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *West,* 589 Fed. Appx. at  925 (internal quotations omitted).

Although Plaintiff has exhausted her administrative remedies as to the sexual abuse allegations, she has not administratively exhausted her First Amendment claim regarding contact with her attorneys, witness intimidation, or the other factual allegations raised in paragraphs 48-64 and 80-83 of her Complaint.   (See ECF 8 – 1)   "Because '[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies,' the district court lacks subject matter jurisdiction over prematurely filed suits." *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (quoting *McNeil v. United States,* 508 U.S. 106, 113 (1993)).   Accordingly, Defendant asserts the affirmative defense of lack of jurisdiction for this claim.   See *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

Plaintiff's First Amendment claims, which were not included in her administrative claim, should be dismissed for failure to exhaust her administrative remedies as required under the *PLRA*.

**IV.  UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY FOR INJUNCTIVE RELIEF UNDER THE FTCA.**

The FTCA waives the United States' sovereign immunity only for suits seeking money damages, and not for suits seeking injunctive relief.  28 U.S.C. § 1346(b)(1) ("district courts …. have exclusive jurisdiction of civil actions on claims against the United States, for money damages, …"); *see, e.g.*, *Janis v. United States*, 162 F. Appx 642, 644 (7th Cir. 2006) (recognizing that "injunctive relief is unavailable as a remedy under the FTCA").  In Cause of Action V, Plaintiff has identified no other statutory provision that waives the United States' sovereign immunity for claims for injunctive relief; consequently, this claim should also be dismissed for a lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475.

WHEREFORE, for the reasons set forth in this Motion to Dismiss and Memorandum of Law, Defendant respectfully requests the Court to dismiss Plaintiff's Complaint against Defendant, United States of America, in its entirety and enter judgment in its favor.

Respectfully submitted,

CHRISTOPHER P. CANOVA
United States Attorney


*/s/ Winifred L. Acosta NeSmith*
WINIFRED L. ACOSTA NESMITH
Assistant United States Attorney
Florida Bar No. 0076333
111 N. Adams Street, 4th floor
Tallahassee, Florida 32301
(850) 942-8430 - Office
(850) 942-8448 - Fax
Winifred.Nesmith@usdoj.gov
Attorney for United States of America


## LOCAL RULE 7.1(F) CERTIFICATE

The undersigned hereby certifies that this Motion contains 5,414 words.


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was sent electronically via CMECF to James v. Cook, Esq., and Richard E. Johnson, counsel for Plaintiff on this 12th day of May, 2017.


*/s/ Winifred L. Acosta NeSmith*
WINIFRED L. ACOSTA NESMITH
Assistant United States Attorney
Attorney for United States of America