IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TABITHA WHITE,

    Plaintiff,

v.                                                                                  Case No. 4:17cv59-MW-CAS

UNITED STATES OF AMERICA and
OFFICER JIMMY HIGHSMITH,

    Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS
BY DEFENDANT UNITED STATES OF AMERICA**

Plaintiff respectfully opposes the motion to dismiss the Complaint (ECF No. 9) by Defendant USA for the reasons stated below.

This is an ambitious motion that seeks dismissal of the complaint in its entirety with no discovery. In so doing, the motion operates from omission of key facts and a number of flawed theoretical presuppositions about what the law is.

**MATERIAL FACT SUMMARY**

In addition to the facts stated in USA's summary, the Complaint, which must be taken as true at this stage, alleges:

- that prison staff aided Defendant Highsmith in his sexual exploitation of

–1–

–2–

Plaintiff:

- that the prison authorities took no action against Highsmith despite the testimony of several eyewitnesses to an actual incident of Highsmith sexually penetrating Plaintiff;

- that Highsmith used his authority as an officer at the prison to coerce consent from Plaintiff;

- that Highsmith used Bureau of Prisons (BOP) resources to identify victims who would be vulnerable to his sexual depredations;

- that Highsmith's sexual conduct with Plaintiff was known to the inmates and to the staff of the prison;

- that officers in the control room sought to alert Highsmith that he was about to be caught *in flagrante delicto* with Plaintiff;

- that prison officials had the site of intercourse scrubbed with disinfectant to destroy any evidence of Highsmith's sexual conduct with Plaintiff;

- that despite the testimony of several eyewitnesses and video evidence, prison officials continued the cover-up of Highsmith's misconduct and declined any discipline of him;

- that the prison has an informal policy of turning a blind eye to sexual abuse of inmates;

- that prison officials enabled and abetted Highsmith in his sexual predation;

- that prison officials failed to implement Prison Rape Elimination Act (PREA) regulations as of May 2014.

Inclusion of these facts might have made this motion more difficult to file.

## MEMORANDUM OF LAW

### I. Discretionary-Function Exception to Federal Tort Claims Act (FTCA) Does Not Apply

The discretionary-function exception is the proverbial exception that threatens to swallow the rule, at least as BOP would have it. The exception cannot apply to every conceivable fact scenario in which an officer rapes or otherwise coerces sex from an inmate. But that claim is exactly the premise of this motion. The discretionary-function exception section of the motion is framed in entirely theoretical terms. It makes not even a passing mention of the particular facts of this case. The facts don't matter because, whatever the facts may be, USA is immune when an officer rapes an inmate. Or so the argument goes.

The argument operates on the assumption that all hiring, training, supervision, and retention decisions regarding prison employees are discretionary functions, so USA is *a priori* immune from any litigation arising from those functions. After admitting that the Eleventh Circuit has not held such a thing, the motion quotes fugitive passages from other circuits purportedly finding that purported sweeping

immunity. Not a one of those citations supports the claimed proposition.

As for negligence in conducting the investigation, BOP seeks discretionary-function immunity on the ground that the agency has a number of rules and policies regarding how to do these investigations. But those rules mean nothing if they are not followed or obeyed. BOP never claims to have applied those rules in this case and makes not even a passing challenge to Plaintiff's allegations of deliberate misconduct and rule-violations that turned the investigation into a cover-up. BOP uses circularity to address that omission. BOP says its discretionary-function immunity extends to the way it implements its rules. So no matter what rule violations others may perceive, BOP is the sole judge of its compliance with its rules and thus cannot be sued when its breaches of those rules cause inmates to be raped.

So, to hear BOP tell it, any wrongdoing by officers that may be attributable to BOP must involve fault in hiring, training, supervising, or retaining the offending officer. But all those functions are *per se* shielded from litigation by the discretionary function exception. If a plaintiff alleges that BOP's violations of rules governing the prison caused the rape, that is a challenge to the way BOP implemented or enforced the rules. Such a challenge is not cognizable because BOP is the sole judge of whether its conduct complies with the rules. In this theoretical framework, the conduct of BOP, at least as it relates to officers raping inmates, is hermetically sealed from any possible legal challenge, regardless of the facts.

If that were the law, one might expect that all such cases have been barred by the discretionary-function exception. But that is not so. Indeed, the Supreme Court has rejected such an absolute immunity. *Sheridan v. United States*, 487 U.S. 392 n.8 (1988) ("[I]t is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee.").

In *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), the U.S. Supreme Court distinguished between government decisions at the planning level, and those at the operational level. The plaintiff in *Indian Towing* sued the United States for negligence of the Coast Guard in maintaining a lighthouse. As here, the government argued the discretionary function exception. In rejecting this argument, the Court held that the FTCA allowed liability because the government affirmatively undertook to warn the public and "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Id*. at 64-65, 76 S. Ct. at 124. Justice Frankfurter went on to explain:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain the light was kept in good working order…. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

*Ochran v. United States*, 117 F.3d 495, 505 (11th Cir. 1997), *citing Indian Towing*.

The Court refined its analysis in *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991). Before *Gaubert*, federal courts had generally interpreted *Indian Towing* and other Supreme Court precedent as drawing a distinction between governmental decisions at the planning or policy making level and those at the operational or policy application level. *See, e.g., Gaubert*, 499 U.S. at 321, 111 S. Ct. at 1272-73. The discretionary function exception was said to cover decisions at the planning level, but not at the operational level. *See Gaubert*, 499 U.S. at 321, 111 S. Ct. at 1272-73 (explaining the rationale of the Court of Appeals). In *Gaubert,* the Supreme Court rejected this distinction, explaining that "the United States was held liable [in *Indian Towing*], not because the negligence occurred at the operational level but because making sure the light was operational "did not involve any permissible exercise of policy judgment.'" *Id*. at 326, 111 S. Ct. at 1275 (*quoting Berkovitz*, 486 U.S. at 538 n. 3, 108 S. Ct. at 1959 n. 3). The same is true here.

In *Ochran v. United States*, 117 F.3d 495 (11th Cir. 1997), a woman who cooperated with the government to apprehend a drug trafficker was almost murdered. The district court concluded that the discretionary function exception deprived it of subject matter jurisdiction and dismissed the case. The Eleventh Circuit reversed the district court's dismissal, holding that although the government's decisions fell within the discretionary function exception, the exception did not bar

a cause of action based on the negligent failure of the government to take action to protect the informant. 117 F.3d at 505-06.

In *United States v. Muniz*, 374 U.S. 150, 164-65, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963) the Court held that "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, which provides in pertinent part:

> The Bureau of Prisons . . . shall--
>
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the *protection*, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . . .

§ 4042(a)(1)-(3) (*emphasis added*). However, as noted in *Ochran* and also *Cohen v. United States,* 151 F.3d 1338 (11th Cir. 1998), that is just the beginning of the analysis. The next step is to determine whether the policy provides the government with leeway to choose the course of action it ultimately did choose. For instance, in *Ochran*, the government did not have the discretion to simply fail to provide protection.[1] In asking the Court to dismiss Ms. White's complaint, the U.S. files a series of sexual abuse policies but does not state how it operated within its discretion

---

[1] In *Cohen*, the court considered the "inherently policy-laden" context of a prison classification system and held that officials should be accorded "wide-ranging deference." 151 F.3d at 1344.

to protect Ms. White. To the extent that BOP failed to follow its policies, there is no protection at all. As the U.S. Supreme Court noted in *Gaubert*:

> if the employee violates the mandatory regulation [or guideline], there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."

499 U.S. at 324. These complexities make it very hard to determine on an as yet very incomplete record whether, in fact, the BOP policies were followed and whether, when viewed in light of the developed facts, they provided the BOP the leeway to act as they did act. The United States has gone far afield to find cases that seem to support their position. Many of the closest cases cited by the United States were decided on a fully developed record – on a motion for summary judgment or jury verdict. And in at least one case, the court did not grant the relief sought here.[2]

Many other courts have found that, depending on the facts, the discretionary-function exception to FTCA does not bar claims of federal inmates against BOP for failure to protect them against sexual assaults by officers. *Knappick v. United States*, 875 F.2d 318 (9th Cir. 1989) (unpublished) (inmate's FTCA suit for sexual assault by officer "is not barred by either the intentional tort or the discretionary function exception to the FTCA"); *Brignac v. United States*, – F. Supp.3d – , 2017 WL 1080927 (N.D. Ga. March 9, 2017) (discretionary-function exception does not

---

[2] *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000)

bar negligent hiring and retention claims for sexual assault where USA had notice of offender's conduct); *Brons v. United States*, 2015 WL 630433 (N.D. Ga. Feb. 12, 2015) (discretionary function exception does not apply to inmate sexually assaulted by prison doctor where prison had knowledge of offender's prior conduct); *Davis v. United States*, 474 F. Supp.2d 829 (N.D. Tex. 2007) (issues of material fact bar summary judgment on discretionary-function exception where negligence of two officers enabled a third officer to rape inmate); *Riascos–Hurtado v. United States*, 2015 WL 3603965 (E.D. N.Y. 2015) (discretionary-function exception does not bar claims of sexually assaulted inmates for negligent supervision and retention of offending officers).

Application of the discretionary-function exemption to FTCA claims for sexual abuse of inmates by officers is a fact-bound inquiry, not a question of pure-law immunity. Because the instant Complaint has the allegations that have traditionally allowed cases of this nature to go forward, the motion to dismiss is infirm and must be denied.

## II. Plaintiff's Battery Claim Is Viable Under FTCA

BOP argues correctly that the pertinent legal inquiry on the battery count is whether the employing agency would be liable for the conduct of the offending officer under state law, in this case, Florida law. But BOP errs in arguing there is no such liability.

Vicarious liability of employers for acts of employees (typically intentional torts) occurs most commonly in sexual abuse cases such as this one, but also arises in other contexts. There are at least six distinct theories under which an employer can be held liable for the acts of an employee.

The Restatement (Second) of Agency (which Florida follows) offers the following six theories by which a principal may be liable for the acts of an agent -- whether the agent is an employee or not.  Note that the last includes two separate theories.

- §219(1) -- action in scope of and in furtherance of employment
- §219(2)(a) -- employer intended act or consequence
- §219(2)(b) -- employer negligent or reckless
- §219(2)(c) -- non-delegable duty
- §219(2)(d) -- action with apparent authority **or** aided by the agency relation

Many employers, including USA in this case, would have the courts believe that the first -- commonly called *respondeat superior* -- is the only one. Strict application of this doctrine eliminates many instances of vicarious liability in sexual abuse cases because the conduct is commonly defined as for the offender's own benefit, not activated by a motive to serve the employer.  This is where BOP lays its stress in the instant motion – the apparent common sense notion that rapists seek their own gratification rather than fulfilment of a duty to the employer whose grant

of resources and authority made the rape possible.

But even this limited notion of *respondeat superior* can sometimes be fulfilled by plaintiffs in sexual abuse cases. There is emerging authority in racial and sexual harassment cases for the proposition that racial and sexual harassment may be motivated by a desire to serve the master and is therefore in the scope of employment. Even where the employer has policies and procedures against such conduct and genuinely forbids it, if the offenders believe the company would be a better place with certain racial and sexual stereotypes enforced, and if the offenders act in accordance with such beliefs with at least some fault on the part of the employer, liability will attach under common law agency principles. From there, it is easy enough to see that some rapists rape to put women in their place, to exercise power, to establish gender dominance, to use rape to extract submission and obedience. These could all be ways to serve the master if one remembers that the law does not require the method of service to the master to be authorized, approved, or even reasonable. Indeed, it is probably by now a minority view in psychology that rapists are motivated by a simple desire for sexual gratification. The motives often include power and control which are not inconsistent with a correctional officer's relations with inmates. Indeed, exercising control and domination over inmates is very much a part of the correctional officer's job. Violence is within the job description. Though rape and certain other forms of violence are forbidden, that

forbidden violence may still be within the scope of duty, whether or not the officer derives some personal satisfaction from it. Even the United States Department of Justice (USDOJ) recognizes that rape is not just about sex, but about power, and control. Exhibit 1, *Staff Perspectives: Sexual Violence in Adult Prisons & Jails*, Department of Justice, National Institute of Corrections, July 2007, Volume 2, p. 3.

The view of sexual abuse as being within the scope of duty has made its way into American law. The U.S. Supreme Court started this ball rolling in federal law. In *Burlington Industries v. Ellerth*, 118 S. Ct. 2257, 2267-68 (1998), the court noted that a discriminatory hostile environment may well be motivated by a purpose "mistaken or otherwise, to serve the employer" and that common law agency liability would be created. *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2286-88 (1998), noted that employer acts aimed at placating or catering to prejudices of lower ranking employees are actionable. *See also*, *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 151-2 (3d Cir. 1999) (harasser who thinks his employer would be better off without women may be acting within scope of employment); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270 (10th Cir. 1998) (remanding racial harassment case in light of *Faragher/Ellerth*, to apply intent-to-serve-employer standard because offenders may have acted in scope of employment if acting "with the purpose, mistaken or otherwise, to serve the employer"); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994) (supervisor used sexual

harassment against employee for her perceived failings as worker rather than out of sexual desire).

Still, that is not the strongest argument for Plaintiff. It may be best to bypass *respondeat superior* formulations in favor of some of the five other theories of vicarious liability, especially the theories of negligent or reckless conduct under §219(2)(b) or conduct aided by the agency relation under the second half of §219(2)(d). These require no motive by the offender to serve the employer and no action within the scope of employment. The negligence branch of agency is exemplified in our jurisdiction by *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir. 1999) (employer knowledge of prior harassment by same offenders of earlier female employees established vicarious liability). The "aided-by-the-agency-relation" method of imputing liability often informed Title VII inquiries before *Faragher/Ellerth* cut back on it somewhat in this statutory context. Drawing upon the common law of agency, especially §219(2)(d), cases such as *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir. 1987), allowed employer liability wherever the harasser had used some authority or instrumentality or access which he could not have used but for a grant of privilege or power of some sort by the employer. This remains a viable doctrine for common law torts in most of the United States, including Florida. *Nazareth v. Herndon Ambulance Service*, 467 So. 2d 1076, 1078 (Fla. 5th DCA), *rev. den.*, 478 So. 2d 53 (Fla. 1985)

(employer may be liable for employee's sexual assault though offender acted for own purposes where act was aided by the agency relation); *Industrial Insurance Co. of New Jersey v. First National Bank of Miami*, 57 So. 2d 23 (Fla. 1952) (principal may be liable for acts of agent even where agent acts entirely for his own purposes); *Byrd v. Richardson-Greenshields Securities, Inc.*, 552 So. 2d 1099 (Fla. 1989) (approving in principle claims of vicarious liability for assault and battery, intentional infliction of emotional distress, and negligent hiring and retention of employees).

*Nazareth* is probably the most on-point authority in all of Florida law for the point at issue here. It was therefore startling to see BOP cite it for the opposite of its actual holding.

The doctrine of ratification also provides a basis for liability. This arises where, as here, an employer learns of an offense by a supervisor and seeks to cover it up or conduct a biased investigation to excuse the offender or blame the victim. *Blackburn v. John Hancock Mutual Life Insurance Co.,* 587 So. 2d 506 (Fla. 1st DCA 1991) (Schwartz, J., dissenting) (biased response to complaints condones, confirms, and ratifies offending conduct).

### III.  Plaintiff's First Amendment Claim Is Viable

#### A. Whether First Amendment claim can be brought under FTCA

As an initial matter, it appears that, as noted by Defendant United States, a constitutional complaint cannot be brought under the rubric of the Federal Tort

Claims Act and Plaintiff will seek a limited amendment to add 5 U.S.C. § 702, to her jurisdictional paragraph and substitute it as the basis for Count IV.

### B. **Plaintiff did grieve the First Amendment retaliation issue**

Plaintiff has alleged the violation of her constitutional right to consult with her attorney and redress grievances through her attorney. She complains that the United States has sought to intimidate, interfere with and impede her access to her attorneys and compromised the confidentiality of her meetings and communications with her attorneys. The United States, however, claims Ms. White did not grieve this First Amendment retaliation issue. In the FTCA form filed as an exhibit by the United States (ECF No. 8-1), Ms. White states:

> Administrators and investigators of FCI Tallahassee have a long history of toleration of sexual abuse of inmates, contraband smuggling, and *retaliatory punishment of inmates who complain of mistreatment* with only scattered and ineffective efforts to investigate allegations of abuse or protect inmates.

Id. at p. 5. (*emphasis added*). Plaintiff submits that this should have put the United States on notice as to that issue.

Moreover, Plaintiff, through counsel wrote a grievance to the Warden detailing the access-to-counsel violations (Exhibit 2) and attached thereto a letter to the previous Warden detailing similar violations (Exhibit 3).

To the extent that this issue must be more completely grieved, Ms. White would request that the Court stay proceedings for the period necessary to fully grieve

this issues as a predicate to her First Amendment claim.

## IV.   Plaintiff Has a Claim for Injunctive Relief

### A. Whether injunctive relief can be sought under FTCA

Plaintiff also concedes that injunctive relief is unavailable under the Federal Tort Claims Act and seeks leave to amend to the limited extent of adding 28 U.S.C. § 1331 to her jurisdictional paragraph and substitute it as the basis for Count V.

### Conclusion

Based on the above argument and citations to authority, the Motion to Dismiss by the Defendant United States should be DENIED.

Respectfully Submitted,

/s/Richard E. Johnson
RICHARD E. JOHNSON, ESQ.
Florida Bar Number 858323
MELISSA A. HORWITZ
Florida Bar Number 017333
Law Office of Richard E. Johnson
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 425-1997; 561-0836 fax
richard@nettally.com
melissah@nettally.com

JAMES V. COOK, ESQ.
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
850-222-8080; 850-561-0836 fax
cookjv@gmail.com

                                                    Attorneys for Plaintiff

I CERTIFY pursuant to Local Rule 7.1(F) this memorandum contains 3578 words.

I CERTIFY the foregoing was filed electronically on 6/2/17 and that counsel of record are registered to be notified by the CM/ECF electronic mail system.

                                                    */s/Melissa A. Horwitz*