| | |
|---|---|
| From: | Rick Johnson |
| To: | "tal\execassistant@bop.gov" |
| Cc: | "James V. Cook"; "Horwitz, Melissa" |
| Subject: | Rights of lawyers and inmates -- 532 |
| Date: | Tuesday, May 26, 2015 11:49:28 AM |
| Attachments: | Letter to Warden.pdf |

Ms. Tammy V. Jones, Warden
Federal Correctional Institution – Tallahassee
501 Capital Circle, NE
Tallahassee, Florida 32301

Dear Ms. Jones:

I write to seek an appointment to meet with you regarding some obstacles being placed in the path of FCI inmates seeking counsel in their own claims or as witnesses in the claims of other current and former inmates.

I am a member of a legal team considering the claims of past and present inmates at FCI. On May 15, 2015, I was turned away from Tallahassee FCI where I was scheduled to visit Tabitha White, # 57130-018. As BOP knows, Ms. White was raped on multiple occasions by a male officer, J. Highsmith. This is the fourth time that gatekeeper shenanigans have turned me away from a proper visit. But between the first three (in 2012) and this one, I had a large number of uneventful visits. This is because, after I sent the attached letter to former Warden J.V. Flournoy, a BOP lawyer whose name I unfortunately cannot locate today, worked out something with FCI Tallahassee whereby they assigned Manny Pulido to facilitate the visits.

In the 2012 incidents, as I point out in the attached letter, the gatekeeping misconduct was in the nature of both hazing and self-protection. Indeed, some of the gatekeeping offenders were involved in the sexual misconduct. One of them, Angel Santiago, is currently serving time. J. Highsmith, who is mentioned as one of the access-troublemakers in my 2012 letter to Warden Flournoy, is the accused offender in Ms. White's case. They were closing ranks because they knew who we were there to see and why. BOP managed to transfer no fewer than 3 and perhaps as many as 5 inmates we tried to see before could see them for an initial or follow-up visit. The gatekeeping got fixed by our protest and I want that done again. We just settled the case of one of those inmates from the 2012 round of visits, Nancy Lugo.

The abortive visit of May 15, 2015, was set up by Stephanie Cimmino of my staff. She has set up well over a dozen such visits. She did this one just like those. I arrived at the reception desk and Officer C. Ward said she had no idea I was coming. I showed her the preparatory paperwork, which included a photocopy of my Florida Bar card and the visitor form. She was sorry to say I could not be admitted without the actual Bar card. I have plantar's fasciitis in my left foot that is worse some days than others. It was flaring up that day. I was obviously limping and explained that it was difficult to go back to the car. Didn't matter. No Bar card, no entry. Photocopy will not do. I hobbled to the car and back with the Bar card, thinking that was all I needed. Now the excuse changed.

I didn't give two weeks' notice. I'm not on some list. In my presence, Officer Ward said she was speaking by phone with both Mr. Horton and Mr. Pulido, both of whom insisted that I be turned away. She said they were somewhere on the property. I followed up with Manny Pulido after the weekend. He denies even being at work that day and denies telling Officer Ward to keep me out.

Mr. Pulido arranged to get me in to see Ms. White on May 22, 2015. I gave her my business card, as I have done with many other inmates over the last three years in that same visitors' room. Officer Loggins confiscated the card as Ms. White left the visiting area. That is completely unacceptable.

My co-counsel, James V. Cook, wrote two letters to Ms. White in advance of my visits. Both were clearly marked as "Confidential Legal Mail." Both were opened by prison staff before being delivered to Ms. White. When she objected to this, an officer told her that "confidential legal mail" is not enough. The envelope must also say "Open only in presence of inmate." That is a trap for the unwary. I don't think it is an actual rule.

Warden Flournoy (or somebody) got this nonsense stopped in 2012. We need to get it stopped again.

These inmates have a constitutional right to counsel that cannot be violated by a single blow or by a thousand bee stings.

I think we know why these visits are more unpopular with staff than the typical attorney visit, which is usually about the criminal charge that put the inmate in prison or some other matter unconnected with the prison itself. Our visits are about officers who have sexual relations with inmates. They will face harsh consequences if the allegations pan out.

Mr. Cook and I have been interested observers of the officer/inmate sex culture at FCI Tallahassee since before the 2006 shootout that killed one local officer and one IG investigator who was part of the team that came to arrest the five local officers. Since then, the culture of entitlement to sex with inmates has waxed and waned as periods of vigorous enforcement intensify and then recede. What remains constant in that ebb and flow is the desire of officers to protect their fellow officers, right or wrong.

I would be most grateful for the opportunity to meet with you at your office or mine or at some other place. Lunch would be good. I would normally offer to get the tab, but in this situation we should go Dutch. Please let me know if we can sit down and work through some of these things.

Rick Johnson
Florida Bar Certified Labor & Employment Lawyer
Law Office of Richard E. Johnson
314 West Jefferson St.
Tallahassee, FL 32301
850-425-1997
850-561-0836 (fax)
richard@nettally.com