IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TABITHA WHITE,                              Case no. 4:17cv59-MW-CAS

     Plaintiff,

v.

UNITED STATES OF AMERICA and
OFFICER JIMMY HIGHSMITH,

     Defendants.

_____/

## DECLARATION OF RONALD PROFFITT

I, Ronald Proffitt, hereby declare and state the following:

1. I serve as the Special Investigative Agent (SIA) for the Bureau of Prisons in Tallahassee, Florida.   As part of my duties, I supervise the Special Investigative Services (SIS) Department, while conducting and overseeing investigations at FCI-Tallahassee.   I have been employed by the BOP since September of 1993.

2. I am familiar with the policies and procedures of the BOP, related to the reporting and investigation of misconduct, including sexual abuse of inmates.

3. When an inmate reports sexual abuse, the report is presented to the Warden, who makes the determination to refer the allegation to the Office of Internal Affairs (OIA).   The OIA then refers the matter to the Office of Inspector General (OIG) to make a determination on whether they will conduct the investigation.   The OIG, along with the Federal Bureau of Investigation, conducted the investigation of Inmate Tabitha White's allegations against Defendant Jimmy Highsmith.

1

4. I have reviewed the OIG report of their investigation, which was referred to the OIA for appropriate action. (See attachment 1).   The OIA sustained the charge of "Appearance of Inappropriate Relationship with an Inmate" against Highsmith.  (See attachment 2).

5. Ms. White reported that she had had sex with Mr. Highsmith on three occasions, but did not report the incidents when they occurred. (see attachment 1, p. 2)   Ms. White reported the final encounter occurred on April 30, 2014, at FCI-Tallahassee and that Mr. Highsmith wore a condom.  (Id.)  She further reported that he did not wear a condom during the first encounter, but did for the second and third encounter.      (Id.)      The OIG report indicates that Ms. White had cleaned herself after the encounter and that she did not provide the clothing she wore during the final encounter until approximately three months after the sexual encounter on April 30, 2014.  (Id)

6. Video surveillance on April 30, 2014, showed Ms. White and Mr. Highsmith entering the officer's station in C-unit, where Ms. White stated the sexual abuse occurred.  (Id.)    The video also recorded five inmates, approaching the officer's station and two of them looking into the window before running away. (Id., pp. 2-3)

7. The OIG report further states that both inmates who looked into the window initially stated that they did not see anything.  (Id., p. 3)  And when later re-interviewed, one of them stated that she saw Mr. Highsmith and Ms. White engaging in intercourse, while the other inmate stated that she saw what appeared to be Ms. White performing oral sex on Mr. Highsmith.  (Id., p. 3)

8. The OIG also interviewed multiple other inmates from C-unit who either had no knowledge of a sexual encounter, reported hearsay, or said that Ms. White advised them that she was involved in a sexual relationship with Mr. Highsmith. (Id., p. 3)

9. When interviewed, Mr. Highsmith denied any sexual encounter with Ms. White.  (Id.)

2

10. As part of the OIG investigation, OIG interviewed six staff members, thirteen inmates (including Ms. White), and Mr. Highsmith.  (Id., p. 5)  Amongst other items, they also reviewed the surveillance video, and medical records of Ms. White.  (Id.)  Additionally, they collected physical evidence, including articles of clothing belonging to Ms. White, fabric from the desk chair in the officer's station, swab from the same desk chair, swabs from the telephone cord in the officer's station, as well as a tampon, vaginal and cervical swabs, and a washcloth from Ms. White.   (Id., p. 9)

11. These items were sent to the FBI forensics lab, where it was determined that traces of dimethicone and polyethylene glycol were found on Ms. White's sweatpants and washcloth.  (Id.)  While these substances are common condom lubricants, they are also found in common personal care products.  (Id.)

12. The OIG also conducted a computer forensics exam of Highsmith's work computer and found nothing related to the allegations.  (Id., p. 10)

13. The OIG concluded that Mr. Highsmith had not been truthful, had likely engaged in sexual conduct with Ms. White and another inmate whose allegations were investigated in conjunction with Ms. White's investigation, and was thus,  in violation of Program Statement 3420.11 (sexual abuse of an inmate), and had engaged in the appearance of an inappropriate relationship with an inmate.   (Id., p. 10)

14. After a referral was made, the U.S. Attorney's Office "declined criminal prosecution of Highsmith for violation of 18 USC 2243, (Sexual Abuse of a Minor or Ward) due to a lack of evidence."  (see attachment  1, p. 10)

15. I have also reviewed OIA files relating to Mr. Highsmith's prior misconduct cases.  At the time Ms. White's allegations were raised, Mr. Highsmith had two prior unsustained misconduct cases during his employment with the BOP.

16. One allegation occurred in February 2012, when two doors (one leading into the unit office area and another leading into the office itself) were found unlocked on the unit where he was assigned to work.  There were however,

3

other staff who had access to the key to office door and it was found unlocked shortly after an inmate count, and the investigator concluded that the possibility that other staff were responsible for the unlocked door was high. This allegation was therefore, not sustained against Mr. Highsmith.

17. The other misconduct allegation was reported in April 2012, and was an allegation by an inmate that Mr. Highsmith had sexually abused her in 2010 and provided her with drugs.  Mr. Highsmith denied the allegations and there was no other evidence to corroborate the inmate's report.   The OIA reviewed the local investigations of each of these matters and found a lack of sufficient evidence to sustain the charges.    (See attachment 3).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed in Tallahassee, Florida,  this 2nd day of February, 2018.

Ronald Proffitt
Special Investigative Agent
Federal Bureau of Prisons
FCI Tallahassee

4

# Office of the Inspector General
# United States Department of Justice

# **REPORT OF INVESTIGATION**

Case Number:   **2014-006986**

Date:   **October 15, 2015**

**Report Provided to:**

**Federal Bureau of Prisons**

CAUTION:  Compelled
Statements Within



THIS REPORT CONTAINS SENSITIVE LAW ENFORCEMENT MATERIAL.  IT MAY NOT BE
LOANED OUTSIDE YOUR AGENCY AND, EXCEPT IN CONNECTION WITH OFFICIAL AGENCY
ACTION, NO PORTION OF THE REPORT MAY BE COPIED OR DISTRIBUTED WITHOUT THE
KNOWLEDGE AND CONSENT OF THE INSPECTOR GENERAL.

SENSITIVE BUT UNCLASSIFIED

DISC-002557

**DEFENDANT'S
EXHIBIT**

tabbies®

1

U.S. Department of Justice
Office of the Inspector General

# REPORT OF INVESTIGATION

| SUBJECT | CASE NUMBER |
|---|---|
| Jimmy L. Highsmith (***-**-0092)<br>Correctional Officer<br>Federal Correctional Institution<br>Tallahassee, Florida | 2014-006986 |

| OFFICE CONDUCTING INVESTIGATION | DOJ COMPONENT |
|---|---|
| Miami Field Office | Federal Bureau of Prisons |

| DISTRIBUTION | | STATUS | | |
|---|---|---|---|---|
| [X] Field Office  MFO | | [] OPEN | [] OPEN PENDING PROSECUTION | [X] CLOSED |
| [X] AIGINV | | PREVIOUS REPORT SUBMITTED: | [] YES | [X] NO |
| [X] Component  BOP | | Date of Previous Report: | | |
| [] USA | | | | |
| [] Other | | | | |

## SYNOPSIS

The Office of the Inspector General (OIG) initiated this joint investigation with the Federal Bureau of Investigation (FBI) after having received information from Federal Bureau of Prisons (BOP) Special Investigative Agent (SIA) Dan Clark, who alleged that on April 30, 2014, at the Federal Correctional Institution (FCI) in Tallahassee, Florida, Correctional Officer (CO) Jimmy L. Highsmith, engaged in sexual intercourse with inmate Tabitha White. During this investigation, the OIG was further informed by Vice Consul Ana Ardon, of the Consulate General of Honduras, Miami, Florida, that Honduran national ███████ ███████ ███████ also alleged that Highsmith engaged in sexual intercourse with her at the FCI Tallahassee.

White told the OIG that she engaged in sexual intercourse with Highsmith on three occasions, but she never reported the encounters. White acknowledged that the most recent encounter occurred on April 30, 2014, and was allegedly observed by other inmates, some of whom reported the incident to staff members. White also reported that while Highsmith did not use a condom during the first encounter, he did use a condom during the second and third encounter. The OIG was unable to recover useful forensic evidence from White's encounters because of the following factors: condom use; time lapse between the encounter and a medical exam; time lapse between the encounter and processing the location of sexual activity; White having cleansed herself after the sexual encounter; and White not providing the clothing she wore during the third sexual encounter until approximately three months after the sexual encounter.

Video surveillance on April 30, 2014, showed White and Highsmith entering the officer's station in C-Unit, where White said the third sexual encounter took place. The video also recorded five inmates approaching the

| DATE | October 15, 2015 | SIGNATURE | _(signature)_ |
|---|---|---|---|
| PREPARED BY SPECIAL AGENT | | | Robert A. Perez |
| DATE | October 15, 2015 | SIGNATURE | _(signature)_ |
| APPROVED BY SPECIAL AGENT IN CHARGE | | | Robert A. Bourbon |

DISC-002558

OIG Form III-207/4B (06/22/05)  Portions of the Report of Investigation may not be exempt under the Freedom of Information Act (5 USC 552) and the Privacy Act (5 USC 552a)

officer's station and two of them peering into the window before running away. Both inmates who looked in the window initially stated they did not see anything. When the two were interviewed again, one inmate said she saw Highsmith and White engaged in intercourse and the other inmate said she witnessed what appeared to be White performing oral sex on Highsmith.

The OIG interviewed multiple other inmates from C-Unit who either had no knowledge of a sexual encounter, reported hearsay, or said that White told them she was involved in a sexual relationship with Highsmith. However, none of these inmates observed any sexual activity between Highsmith and White. One inmate made an additional allegation that Highsmith was also involved in a sexual relationship with inmate ██████ ████████ however, ███████████ denied the allegation.

The OIG interviewed ██████████, who stated that Highsmith sexually assaulted her on or about March 4, 2014, in a bathroom in the C-Unit offices. ████████ said Highsmith used a condom and instructed her to clean herself afterwards. ████████ did not report the incident until October 3, 2014, when she reported it to Honduran Consulate Agent Dario Munguia while meeting with him regarding her deportation.

Highsmith denied that he sexually abused or had any sexual contact with inmates White and ████████. Highsmith admitted however that he was in the officer's Station with White with the door closed and the lights off. Highsmith claimed that they were only talking and that it was his normal preference to be in the office with the lights off.

The U.S. Attorney's Office for the Northern District of Florida declined criminal prosecution of Highsmith.

The OIG concluded that Highsmith likely engaged in sexual contact with inmates White and ████████ Despite a lack of physical evidence, the OIG found inmates White and ████████ to be credible. The OIG's conclusion is based upon:

- inmates White and ████████ being consistent in their allegations throughout several interviews in which they were critically questioned;
- inmates White and ████████ exhibiting a sincere demeanor in recounting their sexual abuse;
- the fact that White did not report the incident herself and ████████ did not report the incident until preparing for release thereby undermining questions about their credibility based on the notion that they were seeking to benefit by reporting the abuses.

In contrast, the OIG concluded that Highsmith's denial of the incidents were not credible and constituted false statements to the OIG. The OIG found Highsmith not to be credible because:

- Highsmith remained in an office with a female inmate, with the door closed and the lights off, for approximately 9 minutes, after "lights out;"
- other inmates looked in the window and stated they observed Highsmith and White engaged in sexual activity;
- White later returned to the office and appeared to chastise Highsmith and gesture that other inmates were looking in the window;

- Highsmith claimed in his interview that it was his practice to remain in his office with the lights off but when White returned to speak with him and opened the office door, the reflection of the office light could be seen on the floor.

The OIG determined that a preponderance of the evidence demonstrated that Highsmith likely sexually abused inmates White and ▉▉▉▉ in violation of BOP Program Statement (PS) Number 3420.11, Standards of Employee Conduct, Section 4 (General Policy) which states "...*Employees must endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated in this policy and the statutes*...." and section 5B (Sexual Relationships/Contact With Inmates) which states "*Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates...*" Furthermore, the OIG found that Highsmith failed to provide truthful information during his OIG interviews which also violated BOP PS 3420.11, Section 9 (Official Investigation) which states, "...*During the course of an official investigation, employees are to cooperate fully by providing all pertinent information they may have. Full cooperation requires truthfully responding to questions....*"

The OIG has completed its investigation and is providing this report to BOP for appropriate action.

# DETAILS OF INVESTIGATION

## Predication

The Office of the Inspector General (OIG) initiated this joint investigation with the Federal Bureau of Investigation (FBI) after having received information from Federal Bureau of Prisons (BOP) Special Investigative Agent (SIA) Dan Clark, who alleged that on April 30, 2014, at the Federal Correctional Institution (FCI) in Tallahassee, Florida, Correctional Officer (CO) Jimmy L. Highsmith, engaged in sexual intercourse with inmate Tabitha White.  During this investigation, the OIG was further informed by Vice Consul Ana Ardon, of the Consulate General of Honduras, Miami, Florida, that Honduran national ██████████ ██████████████████ also alleged that Highsmith engaged in sexual intercourse with her at the FCI Tallahassee.

During the investigation a witnesses alleged that Highsmith also engaged in sexual activity with inmate ████████████████.

## Investigative Process

The OIG's investigative efforts consisted of the following:

Interviews of the following BOP personnel:

- Nigel Boyette, Correctional Officer;
- Ray Pennick, Operations Lieutenant;
- Tyler Kirk, Correctional Officer;
- Michele Bryant, Warden's Secretary;
- Edward Stanley, Case Manager;
- Alfred Brannan, Senior Officer Specialist.

Interviews of the following inmates:

- Tabatha White;
- 
-
-
-
-
-
-



- ████████████
- ████████████
- ████████████
- ████████████

<mark>Review of the following:</mark>

- <mark>Surveillance System Video;</mark>
- <mark>FBI Laboratory Report of Examination;</mark>
- <mark>Medical Records for Tabatha White;</mark>
- <mark>Health Services Clinical Encounter and Psychology Records for</mark> ████████████;
- <mark>BOP Program Statement 3420.11 - Standards of Employee Conduct.</mark>

## Sexual Abuse of an Inmate

The information provided to the OIG alleged that on April 30, 2014, inside the Officers Station in C-Unit North of the FCI Tallahassee, Highsmith sexually abused White.  The OIG conducted an investigation into the allegation, which if proven would be a violation of Title 18 USC § 2243 (b), sexual abuse of a ward, which states:

> *"Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who is—*
> *(1) in official detention; and*
> *(2) under the custodial, supervisory, or disciplinary authority of the person so engaging;*
> *or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both."*

Similarly, the alleged conduct would also be a violation of BOP Program Statement (PS) Number 3420.11, Standards of Employee Conduct, Section 4 (General Policy) which states "…*Employees must endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated in this policy and the statutes*…." and 5B (Sexual Relationships/Contact With Inmates) which states "*Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates...*" Furthermore, the OIG found that Highsmith failed to provide truthful information during his OIG interviews which also violated BOP PS 3420.11, Section 9 (Official Investigation) which states, "… *During the course of an official investigation, employees are to cooperate fully by providing all pertinent information they may have. Full cooperation requires truthfully responding to questions*…."

*Victim Statements*

The OIG and FBI conducted a recorded interview of White during which she provided detailed accounts of three sexual encounters she claimed occurred between her and Highsmith. According to White, the first encounter occurred in February 2014, on one of the last nights writing during the quarterly officer rotation. White said she was sitting on her bunk writing when Highsmith made his "rounds" through the unit and saw that White was wearing a tongue ring, in violation of institution policy. Highsmith saw the tongue ring and told White to come to his office. When White arrived at the officer's station, Highsmith told her he needed the tongue ring. White said she asked Highsmith not to "write her up" because she would get rid of the tongue ring. White said she told Highsmith that she had other piercings and that she would put the tongue ring in a piercing in her vaginal area. Highsmith stood up from his desk chair and went to the janitor's closet and told White to come with him. White said she followed Highsmith to the closet and he asked her if she could keep a secret. White responded that she could keep a secret and Highsmith kissed White. White said she warned Highsmith that somebody was going to see them. According to White, Highsmith assured her that no one would see them and he kissed White again. White said that Highsmith told her to meet him by the phone booth in the unit after he finished making the rounds and that he would leave the unit door unlocked for her. White said she opened a unit back door at approximately 11:20 p.m., and stood inside the door. According to White, Highsmith met her and asked if anyone had seen her and she said "no." White said Highsmith took her into a bathroom, took off his duty belt, and engaged in sexual intercourse with White as she sat on the table in the bathroom. White said Highsmith was not wearing a condom on this occasion.

According to White, the second incident occurred in March 2014. White said that during the second week of March 2014, at approximately 8 a.m., she was lying in her bunk and the duty officer came to tell her that she had mail in A-Unit and permitted White to go to A-Unit to get the mail. White said she walked into A-Unit and saw Highsmith, who handed White an envelope and told her that there was nothing in the envelope, only blank paper. White said she told Highsmith, "You are really slick." According to White, Highsmith walked out of the office and told White to stand behind the door in case somebody walked in. White said she complied and Highsmith left to lock the unit doors. According to White, Highsmith returned to the room where White was located and attempted to kiss White. White said she asked Highsmith if he had any mints or gum because she had not yet brushed her teeth. White stated that Highsmith gave her a cough drop and put his hands in her pants. White said she told Highsmith that she needed to clean up first because she had just finished her menstrual period and was wearing a pad. According to White, she went into the bathroom, cleaned herself, and then Highsmith came into the bathroom and told her to pull down her pants. White said she bent down and performed oral sex on Highsmith. According to White, Highsmith told her to turn around and bend over. White stated that Highsmith pulled a condom out of his sock, put it on, and engaged in sexual intercourse with White. According to White, Highsmith arranged for White to exit A-Unit through a door that is usually kept locked so that no one would see her before the 8:30 p.m. move.

According to White, the third incident occurred on April 30, 2014, while Highsmith was making the rounds through C-Unit North. White said Highsmith told White to meet him in his office. White said she went to the officer's Station and found Highsmith sitting in the office with the lights off. She entered the office and

According to White, Highsmith moved the items on the desk out of the way and told White to bend over. White said she turned around and bent over the desk, looked back, and saw Highsmith take a condom out of his shoe or sock. White said she noticed that Highsmith was not fully aroused and that Highsmith told White to perform oral sex on him, which she did. Additionally, White said she turned back around and Highsmith penetrated her vaginally from behind. White said she sat up on the table and lifted her legs and she and Highsmith continued to engage in sexual intercourse. White stated that she and Highsmith were inside of the officer's station for approximately nine minutes with the lights off. White stated that after they were finished having sex and while she was sitting on the table she heard giggling and footsteps. White said she became nervous, got dressed and returned to C-Unit North where the other inmates accused her of having sex with Highsmith. According to White, she returned to the officer's station and told Highsmith that the inmates accused them of "having sex." White described Highsmith's reaction as calm and said he told her not to worry about it. White returned to C-Unit North, cleaned her vaginal area, and put on underwear. White said that she inserted a tampon the following morning.

During the investigation, White led officers to believe that they had confiscated all of the clothing that she had on the night of the sexual encounter with Highsmith. However, White had not provided officers the sweat pants that she wore the night of the third sexual encounter with Highsmith. White has no explanation as to why she misled officers into believing that she had given them the sweat pants she had on the night of the sexual encounter with Highsmith.

The OIG interviewed ▮▮▮▮ who explained that on or about March 3, 2014, Highsmith woke her and instructed her to follow him to a staff bathroom. In the bathroom Highsmith undressed ▮▮▮ and sexually assaulted her by having sexual intercourse with her. ▮▮▮ said that Highsmith used a condom and that she did not report the assault as she was in a state of shock. The OIG also interviewed inmate ▮▮▮ who denied any sexual encounter with Highsmith.

### Witness Statements

The OIG interviewed inmates, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ all of whom reported hearsay information that included other inmates telling them Highsmith and White were involved in a sexual relationship. Inmates ▮▮▮▮▮▮▮▮▮▮ reported other inmates telling them Highsmith and White were involved in a sexual relationship and said that White told them she had sex with Highsmith. ▮▮▮▮ also alleged that Highsmith had a sexual relationship with inmate ▮▮▮ who denied the allegation and had no knowledge of Highsmith being involved in inappropriate relationships with other inmates. Inmates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ denied having any knowledge of the incident. Inmate ▮▮▮▮▮ who was one of the witnesses who could be seen looking through the officer's station window on the video surveillance initially stated she did not see anything, then later reported that she had only a partial view of the room and observed what appeared to be White performing oral sex on Highsmith. Inmate ▮▮▮▮▮▮▮, the other inmate who could be seen on the video surveillance looking through the window, initially stated that she did not see anything, but then later said she observed what appeared to be White and ▮▮▮ engaged in sexual intercourse.

video surveillance looking through the window, initially stated that she did not see anything, but then later said she observed what appeared to be White and Hightower engaged in sexual intercourse.

The OIG also interviewed multiple COs, none of whom had knowledge of Highsmith's alleged sexual assaults except for CO Alfred Brannan, who said that when he arrived at work the morning of May 1, 2014, ███████ told him that Highsmith had sexual intercourse with White. ██████ reported the incident to Counselor Manuel Pulido and Captain Roan McCullough.

## Review of Additional Evidence

### *Forensic Analysis*

The following items were submitted for scientific testing:

- Four vaginal swabs from White;
- Four cervical swabs from White;
- One tampon from White;
- Three Panties from White;
- One Washcloth from White;
- A portion of fabric from the desk chair in C-Unit officer's station;
- A swab from the chair in C-Unit officer station;
- Three swabs from the telephone cord in the C-Unit officer's station; and
- A control swab.

According to FBI laboratory examiner Jason Brewer, traces of Dimethicone and polyethylene glycol were found on the sweatpants and washcloth subsequently acquired from White. Brewer explained that Dimethicone and polyethylene glycol were the most common lubricants found on lubricated condoms. However, while Dimethicone and polyethylene glycol are common condom lubricants, they are also found as ingredients in a variety of commercial products, including personal care products. The FBI laboratory also tested for nonoxynol-9 with negative results.

### *Video Surveillance*

The April 30, 2014, BOP surveillance video depicts the view down the C-Unit hallway and shows White going into the officer's station office with the lights off. She is inside the officer's station for approximately 9 minutes with the door closed. The video also shows several inmates running down the hall to the door and ██████ and ██████ looking into the window while the other inmates remain in the hallway. It also shows White leaving the office and standing in the hallway talking to Highsmith.

*Computer Analysis*

The OIG conducted a computer forensics exam of ████████'s BOP computer. A search for items related to the allegations against Highsmith was conducted with negative results.

## Subject Interview

The OIG interviewed Highsmith on two occasions. The first interview was a voluntary interview and the second was a compelled interview. In both interviews Highsmith denied engaging in any type of sexual activity with White or any other inmates. He said that when White came to his office on the evening of April 30, 2014, it was because she needed tampons and they had a conversation for several minutes in his office before she left. Highsmith said that he normally turned his office light off after "lights out" and sat in his office with just the computer turned on. He did not believe this violated any BOP policies.

## Declination of Prosecution

The U.S. Attorney's Office for the Northern District of Florida declined criminal prosecution of Highsmith for violation of 18 USC 2243, (Sexual Abuse of a Minor or Ward) due to a lack of evidence.

## Conclusion

The OIG concluded that Highsmith likely engaged in sexual contact with inmates White and ████████ Despite a lack of physical evidence, the OIG found inmates White and ████████ to be credible. The OIG's conclusion is based upon:

- inmates White and ████████ being consistent in their allegations throughout several interviews in which they were critically questioned;
- inmates White and ████████ exhibiting a sincere demeanor in recounting their sexual abuse;
- the fact that White did not report the incident herself and ████████ did not report the incident until preparing for release thereby undermining questions about their credibility based on the notion that they were seeking to benefit by reporting the abuses.

In contrast, the OIG concluded that Highsmith's denial of the incidents were not credible and constituted false statements to the OIG. The OIG found Highsmith not to be credible because:

- Highsmith remained in an office with a female inmate, with the door closed and the lights off, for approximately 9 minutes, after "lights out;"
- other inmates looked in the window and stated they observed Highsmith and White engaged in sexual activity;
- White later returned to the office and appeared to chastise Highsmith and gesture that other inmates were looking in the window;

- Highsmith claimed in his interview that it was his practice to remain in his office with the lights off but when White returned to speak with him and opened the office door, the reflection of the office light could be seen on the floor.

The OIG determined that a preponderance of the evidence demonstrated that Highsmith likely sexually abused inmates White and ▮▮▮▮▮ in violation of BOP Program Statement (PS) Number 3420.11, Standards of Employee Conduct, Section 4 (General Policy) which states "…*Employees must endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated in this policy and the statutes….*" and section 5B (Sexual Relationships/Contact With Inmates) which states "*Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates…*" Furthermore, the OIG found that Highsmith failed to provide truthful information during his OIG interviews which also violated BOP PS 3420.11, Section 9 (Official Investigation) which states, "… *During the course of an official investigation, employees are to cooperate fully by providing all pertinent information they may have. Full cooperation requires truthfully responding to questions….*"

The OIG has completed its investigation and is providing this report to BOP for appropriate action.



U.S. Department of Justice

Federal Bureau of Prisons

*Washington, D.C. 20534*

MEMORANDUM FOR T.A. JONES, WARDEN
                  FCI TALLAHASSEE, FL

                LLOYD BOYLE

FROM:          Lamine N'Diaye
                Chief, Office of Internal Affairs

SUBJECT:      Jimmy Highsmith
                Senior Officer, GL-7

                OIA Case No.    2014-04754
                                   2015-00141

                OIG Case No.    2014-006986

Attached for your review is the OIG investigative report on the above-named subject(s). Except in connection with official agency action, no portion of this report may be copied or distributed without the knowledge and consent of the Office of the Inspector General.

Based on the OIG's findings, misconduct was sustained as indicated below.

     *Appearance of an Inappropriate Relationship*

Please proceed with disciplinary or adverse action, and notify this office of the action taken.

If you have any questions regarding this matter, please contact me.

Attachment

cc:  H.J. Marberry, Regional Director
      Southeast Region

EXHIBIT 4
Witness Highsmith
Date 11-27-17
Reporter: Anita M. Pekerol

*SBU - Sensitive But Unclassified*       DISC-002539

DEFENDANT'S
EXHIBIT
2

file:///C:/Users/bop39706/AppData/Local/Temp/Temp1_OIA-2012-0343...

Case 4:17-cv-00059-MW-CAS   Document 62-3   Filed 02/02/18   Page 17 of 21

| Matter ID: OIA-2012-03438 | Short Description: JIMMY HIGHSMITH - 057 - BREACH OF SECURITY |
|---|---|

## Matter Details

### Login Information

| | |
|---|---|
| Short Name | JIMMY HIGHSMITH - 057 - BREACH OF SECURITY |
| Classification | Category 3 - Lower Level Administrative |
| Region | SOUTHEAST REGION - SER |
| Institution/Facility | Tallahassee (FCI) - TAL |
| Field Office | DC HEADQUARTERS |
| Non BOP Site | |
| Investigated By | LOC |
| Patriot Act Violation? | No |
| Staff Search Procedure? | No |
| Insider Threat? | No |

### OIG Information

| | |
|---|---|
| Referral Date | |
| Field Office | |
| Disposition | |
| Deferral Date | |
| Case Number | |
| Date Rpt Sent to OIG | |

### Progress

| | |
|---|---|
| Incident Date | 02/19/2012 |
| Reported Date | 02/23/2012 |
| Open Date | 02/23/2012 |
| Last Event | Local Investigative Packet Approved |
| Inv Rpt Status | |
| Inv Rpt Status Date | |

### State Information

| | |
|---|---|
| Current Owner | ROBERT WESTBROOK |
| Matter Access | Public |
| Matter Status | Closed |
| Close Date | 01/17/2013 |

### Other Information

| | |
|---|---|
| Disposition | NOT SUSTAINED |
| Comments | |

## Individual List
**View Person Detail**

| Type | Additional Role | Name | ID | Empl/Inmt/Other |
|---|---|---|---|---|
| Complainant | | ███████████ | | Employee |
| Subject | | JIMMY HIGHSMITH | 02695 | Employee |
| Witness | | SEAN CHEW | | Employee |

## Event List

| Event Type | Due Date | Completion Date |
|---|---|---|
| Local Investigative Packet Approved | 01/17/2013 | 01/17/2013 |
| Pending Investigative Disposition | 03/24/2012 | 02/24/2012 |
| Local Investigation Authorized | 06/23/2012 | 12/10/2012 |
| Local Investigation Authorized | 10/12/2012 | 10/02/2012 |
| Local Investigation Authorized | 01/30/2013 | 12/10/2012 |
| Local Investigative Packet Received | 12/26/2012 | 12/19/2012 |
| Local Investigative Packet Deficient | 01/18/2013 | 01/15/2013 |
| Local Investigative Packet Deficient | 02/07/2013 | 01/15/2013 |
| Local Investigative Packet Received | 01/30/2013 | 01/17/2013 |

## Allegations

### Allegation 1

| | |
|---|---|
| Allegation Category | 211 - WR - Other On-Duty Misconduct |
| Allegation SubCategory | 057 - Breach of Security |
| Status | NOT SUSTAINED |



DEFENDANT'S
EXHIBIT
3

file:///C:/Users/bop39706/AppData/Local/Temp/Temp1_OIA-2012-0343...

Case 4:17-cv-00059-MW-CAS   Document 62-3   Filed 02/02/18   Page 18 of 21

| | |
|---|---|
| Associated Person | JIMMY HIGHSMITH |
| Arrested? | No |
| Charged Offense | |
| Convicted? | No |
| Incarcerated? | No |
| Other (Legal Action) | |

## Narratives

### Narrative 1

| | |
|---|---|
| Type | CASE SUMMARY |
| Narrative | On February 19, 2012, at approximately 5:24 p.m., Lieutenant Keith Marshall discovered the door to the office area in D-Unit and the door to the office were unsecured. The office has a staff computer and a telephone with access to an outside line. Senior Officer Jimmy Highsmith was assigned to D-Unit. Marshall had Highsmith secure the doors. |

### Narrative 2

| | |
|---|---|
| Type | FINAL DISPOSITION |
| Narrative | This local investigation revealed insufficient evidence to support the allegation. Highsmith stated that he always locked the office doors when he was away from the officer's station. Marshall stated he found the door unsecure and waited there while Highsmith returned to the office. Marshall said he saw no other staff in the area that night. Highsmith said he did not remember seeing any other staff in the area that night. The institution locksmith stated that the key to the officer's station is a common key on many of the key rings in the institution. Since the incident occurred shortly after the 4:00 P.M. count and the office key is affixed to many key rings the investigator concluded that the possibility that other staff were responsible for the unsecured office was high. Accordingly, the allegation of Breach of Security against Highsmith was not sustained. |

## Matter Documents

| Document Type | Name | Description | Create Date | Created By | View |
|---|---|---|---|---|---|
| Affidavit | Highsmith Affidavit TAL.pdf | JIMMY HIGHSMITH | 12/19/2012 | ROBERT W WESTBROOK | View |
| Affidavit | Chew Affidavit TAL.pdf | SEAN CHEW | 01/16/2013 | ROBERT W WESTBROOK | View |
| Evidence | Daily Roster 02-19-2012 TAL.pdf | CORRECTIONAL SERVICES ROSTER | 12/19/2012 | ROBERT W WESTBROOK | View |
| Investigative Report | SIS Investigative Report #2012012 (2) (2).pdf | REPORT | 12/19/2012 | ROBERT W WESTBROOK | View |
| Local Investigation Authorization | OIA 2012-03438 Authorization.pdf | | 02/24/2012 | ROBERT W WESTBROOK | View |
| Memorandum of Interview | Marshall MOI TAL (2).pdf | KEITH MARSHALL | 12/19/2012 | ROBERT W WESTBROOK | View |
| OIA Routing Form | Category 3.rtf | | 02/23/2012 | MARIANNE C WINFIELD | View |
| Predicating Information | Predicating Information.pdf | | 02/23/2012 | MARIANNE C WINFIELD | View |

file:///C:/Users/bop39706/AppData/Local/Temp/Temp2_OIA-2012-04780...

Case 4:17-cv-00059-MW-CAS   Document 62-3   Filed 02/02/18   Page 19 of 21

| Matter ID: OIA-2012-04780 | Short Description: JIMMY HIGHSMITH - 006A - 2242/2243 - MALE STAFF/FEMALE INMATE |
|---|---|

## Matter Details

### Login Information

| | |
|---|---|
| Short Name | JIMMY HIGHSMITH - 006A - 2242/2243 - MALE STAFF/FEMALE INMATE |
| Classification | Category 1 - Criminal |
| Region | SOUTHEAST REGION - SER |
| Institution/Facility | Tallahassee (FCI) - TAL |
| Field Office | DC HEADQUARTERS |
| Non BOP Site | |
| Investigated By | LOC |
| Patriot Act Violation? | No |
| Staff Search Procedure? | No |
| Insider Threat? | No |

### OIG Information

| | |
|---|---|
| Referral Date | 04/16/2012 |
| Field Office | MIAMI FIELD OFFICE |
| Disposition | MANAGEMENT |
| Deferral Date | 05/04/2012 |
| Case Number | 2012006928 |
| Date Rpt Sent to OIG | |

### State Information

| | |
|---|---|
| Current Owner | JANIS JOHNSON |
| Matter Access | Public |
| Matter Status | Closed |
| Close Date | 10/29/2013 |

### Progress

| | |
|---|---|
| Incident Date | |
| Reported Date | 04/13/2012 |
| Open Date | 04/16/2012 |
| Last Event | Case Closed |
| Inv Rpt Status | |
| Inv Rpt Status Date | |

### Other Information

| | |
|---|---|
| Disposition | NOT SUSTAINED |
| Comments | |

### Individual List

View Person Detail

| Type | Additional Role | Name | ID | Empl/Inmt/Other |
|---|---|---|---|---|
| Complainant | Victim | ███████ | | Inmate |
| Subject | | JIMMY HIGHSMITH | 05376 | Employee |
| Subject | | JEFFEREY CARTER | 05377 | Employee |

### Event List

| Event Type | Due Date | Completion Date |
|---|---|---|
| Pending Deferral by OIG | 05/16/2012 | 05/07/2012 |
| Pending Investigative Disposition | 05/22/2012 | 05/08/2012 |
| Local Investigation Authorized | 09/05/2012 | 04/01/2013 |
| Local Investigation Authorized | 12/25/2012 | 12/17/2012 |
| Local Investigation Authorized | 04/16/2013 | 04/01/2013 |
| Local Investigative Packet Received | 04/15/2013 | 04/23/2013 |
| Local Investigative Packet Deficient | 05/23/2013 | 05/31/2013 |
| Local Investigative Packet Received | 06/14/2013 | 06/17/2013 |
| Local Investigative Packet Deficient | 07/17/2013 | 07/12/2013 |
| Local Investigative Packet Received | 07/26/2013 | 08/01/2013 |
| Local Investigative Packet Approved | 08/01/2013 | 08/01/2013 |
| Pending Case Closure | 08/30/2013 | 10/29/2013 |
| Case Closed | 10/29/2013 | 10/29/2013 |

file:///C:/Users/bop39706/AppData/Local/Temp/Temp2_OIA-2012-04780...

Case 4:17-cv-00059-MW-CAS   Document 62-3   Filed 02/02/18   Page 20 of 21

## Allegations

### Allegation 1

| | |
|---|---|
| Allegation Category | 102 - Inmate - Sexual Abuse of Inmates |
| Allegation SubCategory | 006A - 2242/2243 - Male Staff/Female Inmate |
| Status | NOT SUSTAINED |
| Associated Person | JIMMY HIGHSMITH |
| Arrested? | No |
| Charged Offense | |
| Convicted? | No |
| Incarcerated? | No |
| Other (Legal Action) | |

### Allegation 2

| | |
|---|---|
| Allegation Category | 102 - Inmate - Sexual Abuse of Inmates |
| Allegation SubCategory | 007A - 2244 - Male Staff/Female Inmate |
| Status | NOT SUSTAINED |
| Associated Person | ▮▮▮▮▮▮ |
| Arrested? | No |
| Charged Offense | |
| Convicted? | No |
| Incarcerated? | No |
| Other (Legal Action) | |

### Allegation 3

| | |
|---|---|
| Allegation Category | 103 - Inmate - Introduction of Contraband |
| Allegation SubCategory | 015 - Cocaine Introduction |
| Status | NOT SUSTAINED |
| Associated Person | JIMMY HIGHSMITH |
| Arrested? | No |
| Charged Offense | |
| Convicted? | No |
| Incarcerated? | No |
| Other (Legal Action) | |

### Allegation 4

| | |
|---|---|
| Allegation Category | 107 - Inmate - Inappropriate Relationship with Inmates |
| Allegation SubCategory | 033 - Improper Contact with an Inmate/Inmate`s Family |
| Status | NOT SUSTAINED |
| Associated Person | ▮▮▮▮▮▮ |
| Arrested? | No |
| Charged Offense | |
| Convicted? | No |
| Incarcerated? | No |
| Other (Legal Action) | |

file:///C:/Users/bop39706/AppData/Local/Temp/Temp2_OIA-2012-04780...

Case 4:17-cv-00059-MW-CAS    Document 62-3    Filed 02/02/18    Page 21 of 21

## Narratives

### Narrative 1

Type              CASE SUMMARY

Narrative         In a memorandum dated April 13, 2012, Special Investigative Agent George Williams stated that on April 13, 2012, a note from inmate ████████████████████████, was found in the SIS mail. In the note, ████ alleges she was sexually abused by two staff members. Williams stated that during an interview on April 13, 2012, ████ alleges she and Senior Officer Highsmith had sexual intercourse four times during a two week period in October 2010. ████ alleges that on one occasion Highsmith gave her powdered cocaine, which ████ used, prior to engaging in sexual intercourse with Highsmith. ████ also claims that on one occasion Highsmith gave her one ecstasy pill, which she also consumed. ████ alleges that the first time they had sexual intercourse, she and Highsmith went just past the door in the unit team area of B-South and inmate ████████████████████ was their look-out. ████ alleges ████████ stated she has also been involved in a sexual relationship with Highsmith. ████ alleges that sometime during December 2011, she was approached by Senior Officer Jefferey Carter. Carter allegedly asked ████ if he could come to the shower and touch her. ████ alleges she agreed and Carter touched her breast while she was in the shower. ████ alleges Carter asked her if she would help him with an identity theft operation. ████ claims Carter told her that when he was in California, Carter provided inmates with information and the inmates would contact civilians to get credit cards using the information he provided. ████ alleges Carter told her that once she is released she should look him up on Facebook as Jefferey Carter and he has the New Orleans Saints symbol as his picture.

### Narrative 2

Type              FINAL DISPOSITION

Narrative         A review of this local investigation revealed not sustained allegations of Improper Contact with an Inmate/Inmate's Family and Sexual Abuse of Inmates and Improper Contact with an Inmate/Inmate's Family filed against Senior Officer Jefferey Carter. Allegations of Cocaine Introduction and Sexual Abuse of Inmates were also not sustained against Senior Officer Jimmy Highsmith. Witness testimony was insufficient to support that either Highsmith or ████ had a sexual relationship with inmates V████████████████████████████ ████████████████████ or that they touched either inmate inappropriately. The evidence was further insufficient to support that Highsmith introduced narotics into the institution for ████ or that Carter had inappropriate communication with ████. Moreover, both Carter and Highsmith denied each allegations against them. Case closed; Warden notified. /s/Janis Johnson, SA

## Matter Documents

| Document Type | Name | Description | Create Date | Created By | View |
|---|---|---|---|---|---|
| Affidavit | OIA CASE 2012-04780 ADDITIONAL AFFIDAVITS TAL.pdf | OIA CASE 2012-04780 ADDITIONAL AFFIDAVITS TAL.PDF | 06/10/2013 | JANIS JOHNSON | View |
| Affidavit | OIA CASE 2012-04780 CARTER.HIGHSMITH AFF TAL.pdf | OIA CASE 2012-04780 CARTER.HIGHSMITH AFF TAL.PDF | 07/25/2013 | JANIS JOHNSON | View |
| Affidavit | OIA CASE 2012-04780 CLAY 1ST AFFIDAVIT TAL.pdf | OIA CASE 2012-04780 CLAY 1ST AFFIDAVIT TAL.PDF | 07/25/2013 | JANIS JOHNSON | View |
| Affidavit | OIA CASE 2012-04780 CLAY 2ND AFFIDAVIT TAL.pdf | SECOND REVIEW.2012-04780\OIA CASE 2012-04780 CLAY 2ND AFFIDAVIT TAL.PDF | 07/25/2013 | JANIS JOHNSON | View |
| Evidence | OIA CASE 2012-04780 CLAY MEDICAL ASSESSMENT TA.pdf | SECOND REVIEW.2012-04780\OIA CASE 2012-04780 CLAY MEDICAL ASSESSMENT TAL.PDF | 07/25/2013 | JANIS JOHNSON | View |
| Investigative Report | OIA CASE 2012-04780 REPORT TAL AMENDED.pdf | OIA CASE 2012-04780 REPORT TAL AMENDED.PDF | 10/29/2013 | JANIS JOHNSON | View |
| Local Investigation Authorization | OIA-2012-04780 Authorization.pdf | | 05/08/2012 | ROBERT W WESTBROOK | View |
| OIA Routing Form | OIA routing form - 2012-04780.pdf | | 04/16/2012 | SHARON C PETRISKO | View |
| OIG IDMS | OIG IDMS.pdf | | 05/07/2012 | LURA E KEARNS | View |
| OIG Referral | OIG Referral - 2012-04780.pdf | | 04/16/2012 | SHARON C PETRISKO | View |
| Predicating Information | predicating information - 2012-04780.pdf | | 04/16/2012 | SHARON C PETRISKO | View |